[No. C026561. Third Dist. Nov. 19, 1997.]

BARBARA WEST, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
PAMELA LOCKREM, Real Party in Interest.

**COUNSEL**

Sharon M. Huddle for Petitioner.

No appearance for Respondent.

Livingston & Mattesich, Tim Ragan and Kathleen E. Finnerty for Real Party in Interest.

**OPINION**

**NICHOLSON, J.**—In this case, we revisit the issue of whether the courts have jurisdiction to entertain a nonparent's petition to establish parental rights to custody and visitation. We conclude they do not.

Barbara West, mother of Cady, petitions for a writ of mandate challenging a temporary order of the trial court granting real party in interest Pamela Lockrem, West's former lesbian partner, visitation with Cady. We grant the petition and issue the writ.

FACTS AND PROCEDURE

West and Lockrem entered into a lesbian relationship and, in 1992, decided to raise a child together. West was artificially inseminated with sperm purchased jointly by West and Lockrem and, in 1993, gave birth to Cady. The three lived together, with West and Lockrem sharing parental responsibilities, for two and one-half years. Lockrem, however, did not adopt Cady.

In April 1995, West and Lockrem terminated their relationship but agreed to continue sharing parental responsibilities. Eventually, however, West only allowed Lockrem sporadic visits with Cady.

In January 1997, Lockrem filed suit against West, claiming to be a parent under the Uniform Parentage Act and seeking an order to show cause for child custody and visitation. The trial court referred the case to family court services for mediation. West, however, refused to attend, so the court ordered her to attend. Still, she refused. Noting West's refusal, the mediator submitted a report to the court recommending an immediate visitation order.

In April 1997, Lockrem filed a separate complaint against West, alleging 13 causes of action, including breach of contract and equitable estoppel. The complaint sought a permanent injunction granting Lockrem custody and visitation rights. The complaint also sought "dissolution of the partnership" with an accompanying division of assets—matters which are not before us in this proceeding. Urging the trial court to "reject the conventional notions of the family unit," Lockrem filed an ex parte application for a temporary restraining order granting her visitation with Cady. This second action was transferred to the same department as the family law action initially filed.

On May 13, 1997, the trial court made a temporary order awarding Lockrem visitation with Cady on the first and third weekend of each month.[1] Upon the petition of West, we stayed the order of visitation and issued an alternative writ of mandate.

---

[1]Subsequently, the court overruled West's demurrer to the second complaint. We grant Lockrem's motion to augment the record with documents filed in these subsequent proceedings.

## Discussion

■ In 1990, we held that a nonparent in a same-sex bilateral relationship has no standing to obtain custody or visitation of the child of the partner or former partner. (*Curiale* v. *Reagan* (1990) 222 Cal.App.3d 1597, 1600 [272 Cal.Rptr. 520].) In *Curiale*, the plaintiff and defendant lived together in a lesbian relationship. They agreed that the defendant would conceive and bear a child through artificial insemination and they would jointly raise the child. After the child was born, however, the relationship between the plaintiff and the defendant terminated. The parties entered into a settlement agreement, pursuant to which they agreed to share physical custody of the child. Before long, however, the defendant refused to allow the plaintiff any further contact with the child. (*Id.* at p. 1599.)

The plaintiff filed a complaint to establish parental status and obtained an order to show cause concerning custody and visitation. On the defendant's motion, however, the trial court quashed the order to show cause and dismissed the complaint. (*Curiale* v. *Reagan, supra*, 222 Cal.App.3d at pp. 1599-1600.) On the plaintiff's appeal, we affirmed. We held the plaintiff could not seek relief under the provisions of the Uniform Parentage Act (Fam. Code, § 7600 et seq.) or the general provisions concerning a parent's right to custody of a child (Fam. Code, § 3020 et seq.). We concluded: "Jurisdiction to adjudicate custody depends upon some proceeding properly before the court in which custody is at issue such as dissolution . . . . , guardianship . . . , or dependency . . . . However, plaintiff has no standing to avail herself of any of these proceedings. The Legislature has not conferred upon one in plaintiff's position, a nonparent in a same-sex bilateral relationship, any right of custody or visitation upon the termination of the relationship." (*Curiale* v. *Reagan, supra*, at p. 1600, citations omitted.) We also concluded the Legislature is the appropriate forum for expansion of the law, if such expansion is warranted. (*Ibid.*)

Another district of the Court of Appeal questioned our holding in *Curiale* that the trial court did not have subject matter jurisdiction to consider custody and visitation. (*Nancy S.* v. *Michele G.* (1991) 228 Cal.App.3d 831, 835, fn. 2 [279 Cal.Rptr. 212].) In *Nancy S.*, the biological mother commenced an action for a declaration that her former lesbian partner was not entitled to judicially enforced parental rights. While the Court of Appeal found in favor of the biological mother, it noted, referring to *Curiale*, "A court, however, lacks 'jurisdiction' only if it has no power to render a decision over the subject in dispute. [Citation.] In this case, appellant [the former lesbian partner] has always maintained the position that she was a

parent of the child and therefore was entitled to custody and visitation. The court therefore had jurisdiction under the Uniform Parentage Act to decide whether appellant was a parent." (*Ibid.*)

*Nancy S.*'s disagreement with *Curiale* is, at best, dicta. In *Nancy S.*, the biological mother, not the former lesbian partner, brought the action under the Uniform Parentage Act. That act states: "Any interested person may bring an action to determine the existence or nonexistence of a mother and child relationship." (Fam. Code, § 7650; see former Civ. Code, § 7015; Stats. 1975, ch. 1244, § 11, p. 3200.) As an "interested person" the biological mother was entitled to bring an action to determine whether the former lesbian partner possessed a mother-child relationship with the child. Here, there is no such statutory standing. As a person unrelated to Cady, Lockrem is not an "interested person" and, therefore, may not drag West into the courts, under the Uniform Parentage Act, on the issue of visitation with West's daughter.

In the face of our holding in *Curiale*, Lockrem argues: "No doubt this court has become more keenly aware of non-traditional families, and the needs of their children in the [*sic*] since the *Nancy S.* and *Curiale* decisions were rendered. Given the prevailing importance of the best interests of the child, coupled with the growing social and psychological awareness of the extent and quality of non-traditional families, it is important for this court to extend the protections afforded to the children of married families to the children developed in loving, nurturing but not as yet legally formalized families in the best interests of the child." The appropriate response to this request that we legislate social policy with respect to child custody and visitation is contained in our decision in *Curiale* and remains true today: "[Lockrem] misconceives the role of the judiciary as an innovator of social policy. 'Given the complex practical, social and constitutional ramifications of the [de facto parent] doctrine, we believe that the Legislature is better equipped to consider expansion of the current California law should it choose to do so.'" (*Curiale* v. *Reagan*, *supra*, 222 Cal.App.3d at pp. 1600-1601, quoting *In re Marriage of Lewis & Goetz* (1988) 203 Cal.App.3d 514, 519-520 [250 Cal.Rptr. 30].)

Despite our unmistakably clear admonition concerning the locus of social policy development, especially with respect to the structure and dynamics of the family, Lockrem urges us to contort common law principles to provide her desired result. We have no authority to do so. The Legislature has had our decision in *Curiale* now for seven years and has not seen fit to bestow jurisdiction in the trial courts under the circumstances presented here. (See

*In re Marriage of Maytag* (1994) 26 Cal.App.4th 1711, 1715 [32 Cal.Rptr.2d 334] [holding Legislature was aware of courts' interpretations of family law statutes when it recodified them in the Family Code].) To do so would be simple, procedurally. Thus, we can only conclude the Legislature has not made a change because it is not the will of the people.[2]

Lockrem's two main arguments in favor of vesting subject matter jurisdiction over child visitation in the trial court are (1) her contractual right to coparent Cady can be enforced in the trial court in the same manner as other contracts are enforced and (2) West can be equitably estopped from denying the parental relationship Lockrem has with Cady. She bases these arguments on cases from other jurisdictions.[3]

In New Mexico, the court of appeals held a contractual agreement giving an unrelated person a right to custody and visitation of a child is not per se unenforceable. (*A.C.* v. *C.B.* (1992) 113 N.M. 581 [829 P.2d 660].) An unrelated woman, with whom the biological mother had lived, brought an action against the mother seeking joint custody and visitation. The action was dismissed because, ostensibly, a settlement had been reached giving the unrelated woman custody and visitation rights. When the mother refused to abide by the settlement agreement, the unrelated woman moved to reopen the judgment. The trial court granted the mother's motion for summary judgment and affirmed the earlier dismissal. It found the woman had no legal right to custody or visitation and that any contractual agreement was unenforceable because it was not in the best interest of the child. (*Id.* at pp. 582-583 [829 P.2d at pp. 661-662].)

The court of appeals reversed. It held that, under New Mexico law, an agreement by a parent with an unrelated person for custody and visitation of a child is enforceable if it is in the best interest of the child. It further found that a determination concerning the best interest of the child must be made based on evidence. (*A.C.* v. *C.B.*, *supra*, 113 N.M. at pp. 584-587 [829 P.2d

---

[2]"Our decision in this case does not turn upon the personal views of any justice with regard to [the] moral issue[s involved here]." (*American Academy of Pediatrics* v. *Lungren* (1997) 16 Cal.4th 307, 314 [66 Cal.Rptr.2d 210, 940 P.2d 797].) This court expresses no view as to "non-traditional families" or homosexuality.

[3]The California authorities Lockrem cites in her points and authorities as support for her assertions concerning standing and subject matter jurisdiction do not support those assertions. (*Michelle W.* v. *Ronald W.* (1985) 39 Cal.3d 354 [216 Cal.Rptr. 748, 703 P.2d 88] [parentage established under the Uniform Parentage Act]; *Steven W.* v. *Matthew S.* (1995) 33 Cal.App.4th 1108 [39 Cal.Rptr.2d 535] [grant of parental rights to nonbiological father under Uniform Parentage Act]; *Jhordan C.* v. *Mark K.* (1986) 179 Cal.App.3d 386 [224 Cal.Rptr. 530] [standing and subject matter jurisdiction with respect to nonparent not challenged].)

at pp. 663-666].) In arriving at this conclusion, the New Mexico court gave no consideration to the proper forum for social policy development. Instead, it simply treated the visitation matter as a contract dispute, subject to a judicial determination. In California, however, contract principles apply to child custody and visitation only in the manner authorized by the Legislature. (See, e.g., Fam. Code, § 3178 [limitations on mediation agreements concerning custody and visitation].) There is no such authorization under the circumstances of this case.

The Wisconsin Supreme Court held that, even though the former female partner of the biological mother could not petition for visitation under the visitation statutes, she could invoke the equitable power of the court to achieve the same result she unsuccessfully sought under the statutes. (*In re Custody of H.S.H.-K.* (1995) 193 Wis.2d 649 [533 N.W.2d 419].) The court determined that the state legislature did not intend to "occupy the field" of child visitation and the visitation statute is to be viewed "as a legislative declaration of public policy about the rights of certain people to visitation under certain circumstances, but not as a replacement of the equitable jurisdiction of the courts over visitation and the best interest of a child." Based solely on the history of Wisconsin state legislation concerning visitation rights without any express legislative declaration concerning the courts' exercise of authority beyond the visitation statute, the court concluded: "[T]he legislature intended the courts to use their equitable powers to continue the policy direction of the visitation statutes, that is, to exercise their powers for the best interest of a child when a triggering event [such as dissolution of a marriage] justifies state intervention." (*Id.* at p. 689 [533 N.W.2d at p. 433].) While the Wisconsin visitation statutes did not provide for visitation determinations when a lesbian relationship ends and the former partner of the biological mother wishes to maintain contact with the child, the Wisconsin Supreme Court imposed a rule that a court may intervene and order visitation if, after applying a four-part test, it finds "the parent has interfered substantially with the [former partner's] parent-like relationship with the child . . . ." (*Id.* at p. 695 [533 N.W.2d at p. 436].)

In dissent, three justices of the Wisconsin Supreme Court upbraided the majority for usurping the role of the state legislature: "Wisconsin now has two areas of family law, and persons seeking visitation can apparently choose the area that best suits them. One area of family law is declared by the legislature, representing the will of the people of this state. The other area of family law is declared by four justices of this court, representing only their own wills and moral views." (*In re Custody of H.S.H.-K., supra,* 193 Wis.2d at p. 730 [533 N.W.2d 450] (dis. opn. of Steinmetz, J.).)

As is obvious from *Curiale*, California, unlike Wisconsin, does not have two areas of family law. (See also *Nancy S.* v. *Michele G., supra*, 228 Cal.App.3d at pp. 839-840 [rejecting parenthood by equitable estoppel].) If the Legislature does not provide a person with standing to obtain parental rights, the courts must presume the Legislature is acting, or refusing to act, by virtue of its position as representatives of the will of the people. Accordingly, Lockrem's position that this court should confer standing even though the Legislature has not done so is fatal to her attempt to invoke judicial powers to obtain visitation with Cady. The trial court did not have subject matter jurisdiction over custody and visitation matters concerning Cady.[4]

Defending the order of visitation, Lockrem objects to our consideration of whether the trial court had subject matter jurisdiction over the issue because the trial court did not yet rule on whether it had jurisdiction. The court was preserving the issue for West's demurrer. This objection is without merit. Subject matter jurisdiction may be raised and argued at any time in the proceedings because the court is powerless to proceed without it. (*Cowan* v. *Superior Court* (1996) 14 Cal.4th 367, 372 [58 Cal.Rptr.2d 458, 926 P.2d 438].)

In addition to her contention the trial court lacked subject matter jurisdiction, West asserts (1) the trial court erred in ruling West's peremptory challenge under Code of Civil Procedure section 170.6 was untimely and (2) the court had no subject matter jurisdiction to order her to family court services to mediate the custody and visitation dispute. Since we conclude the trial court has no subject matter jurisdiction over child custody and visitation with respect to Cady, we need not resolve these issues separately. (See Code Civ. Proc., § 170.6, subd. (2) [concerning challenge to judge after reversal].)

### DISPOSITION

Let a peremptory writ of mandate issue commanding respondent superior court to set aside its order granting child visitation to Lockrem. The

---

[4]"It is said that when [Oliver Wendell] Holmes left the Massachusetts Court for the Supreme Court, 'he was admonished to do justice. He responded thoughtfully that his job was merely to enforce the law.' Wallace Mendelson, *Justices Black and Frankfurter: Conflict in the Court* 116 (1961). Holmes wrote, 'I have said to my brethren many times that I hate justice, which means that I know that if a man begins to talk about that, for one reason or another he is shirking thinking in legal terms.' *The Mind and Faith of Justice Holmes* 435 (M. Lerner ed. 1943)." (Berger, Government by Judiciary: The Transformation of the Fourteenth Amendment (1977) p. 289, fn. 24.)

alternative writ, having served its purpose, is discharged. This court's stay is dissolved. Costs are awarded to West.

Puglia, P. J., and Callahan, J., concurred.

A petition for a rehearing was denied December 15, 1997.