[No. A045463. First Dist., Div. One. Mar. 20, 1991.]

NANCY S., Plaintiff and Respondent, v.
MICHELE G., Defendant and Appellant.

## COUNSEL

Paula Ettelbrick, Roberta Achtenberg, Levy & Oppenheimer, Amy Oppenheimer, Morrison & Foerster, Rochelle D. Alpert, Maia Ettinger, Tom E. Wilson and Shannan L. Wilber for Defendant and Appellant.

Susan R. Keith, K. Leslie Avery, Matthew A. Coles, Edward M. Chen, Margaret C. Crosby, Alan L. Schlosser, Nan Hunter, William Rubenstein, McCutchen, Doyle, Brown & Enersen, John R. Reese, Glenn D. Schwarzbach and Dana L. Curtis as Amici Curiae on behalf of Defendant and Appellant.

Carol Amyx for Plaintiff and Respondent.

Sidney Hollar, Christopher N. Wu, Alice Bussiere and Carole Shauffer as Amici Curiae on behalf of Minors.

## OPINION

**STEIN, J.**—Appellant, Michele G., appeals from a judgment under the Uniform Parentage Act (Civ. Code, § 7000 et seq.) determining that respondent, Nancy S., is the only parent of the two minor children that respondent conceived by artificial insemination during her relationship with appellant.

The judgment further provided that respondent, as the only legal parent of the two minor children, is entitled to sole legal and physical custody and that any further contact between appellant and the children shall only be by respondent's consent.

The issue presented is whether the court erred in determining, as a matter of law, that appellant has no right to an award of custody or visitation under the Uniform Parentage Act.

## FACTS

In August of 1969, appellant and respondent began living together, and in November of that year they had a private "marriage" ceremony. Eventually they decided to have children by artificially inseminating respondent. In June of 1980, respondent gave birth to a daughter, K. Appellant was listed on the birth certificate as the father, and K. was given appellant's family name. On June 13, 1984, respondent gave birth to a son, S. Again appellant was listed as the father on the birth certificate, and S. was given appellant's family name. Both children refer to appellant and respondent as "Mom." Although the parties considered arranging for appellant to adopt the children, they never initiated formal adoption proceedings.

In January of 1985 appellant and respondent separated. They agreed that K. would live with appellant and that S. would live with respondent. They arranged visitation so that appellant would have K. five days a week and respondent would have S. five days a week, but the children would be together, either at appellant's or respondent's home for four days a week. After approximately three years, respondent wanted to change the custody arrangement so that each had custody of both children 50 percent of the time. Appellant opposed any change, and attempts to mediate the dispute failed.

Respondent then commenced this Uniform Parentage Act proceeding. Her complaint sought a declaration that appellant is not a parent of either child, that respondent is entitled to sole legal and physical custody and that appellant is entitled to visitation only with respondent's consent. The court issued a temporary restraining order and granted temporary custody to respondent. Appellant answered the complaint and admitted that respondent is the biological mother of the children. She denied, however, the allegations that she was not also a parent of the children. She sought an order for custody and visitation in accordance with their original custody agreement.

A hearing was held on respondent's order to show cause and appellant's cross-motion for custody and visitation. The parties fully briefed and argued

the issue whether appellant could qualify as a parent and seek custody and visitation under the Uniform Parentage Act. Appellant admitted that she was not the biological mother and had not adopted the children. Nonetheless, she argued that she had attained the status of a de facto parent, or that respondent should be estopped to deny appellant's status as a parent. The court determined that appellant was not a parent under the Uniform Parentage Act, and that even if she could prove that she had the status of a de facto parent, it could not award her custody over the objections of respondent, the natural mother, who did qualify as a parent under the act. The court therefore awarded sole physical and legal custody to respondent.[1]

## ANALYSIS

Civil Code section 4600, subdivision (c) provides that, in any proceeding where there is at issue the custody of a minor child, "Before the court makes any order awarding custody to a person . . . other than a parent, without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interests of the child." Appellant acknowledges that, regardless of the statutory basis of the underlying proceeding, i.e., whether it was brought under the Uniform Parentage Act, or as a guardianship, dependency, or dissolution proceeding, she is entitled to seek custody and visitation over the objections of the children's natural mother, based on the "best interests" of the children, only if she has alleged facts upon which the court could determine that she is a parent of the children.[2]

The Uniform Parentage Act defines a parent as one who is the natural or adoptive parent of a child. (Civ. Code, § 7001.) The existence of the rela-

---

[1] By denying appellant any relief, the court also impliedly found as a matter of law that appellant could not attain the status of a parent by equitable estoppel.

[2] The trial court concluded that because appellant does not fit the definition of parent under the Uniform Parentage Act, the court had no jurisdiction to award her custody or visitation over the objection of respondent, who all agree is a "parent" as defined by that act. (Civ. Code, § 7003, subd. (1).) At least one other court in a case involving a Uniform Parentage Act complaint filed by a lesbian partner seeking custody and visitation, over the objections of the biological mother, has also characterized the problem as one of lack of standing and lack of subject matter jurisdiction. (See *Curiale* v. *Reagan* (1990) 222 Cal.App.3d 1597, 1600 [272 Cal.Rptr. 520].) A court, however, lacks "jurisdiction" only if it has no power to render a decision over the subject in dispute. (See *In re Marriage of Halpern* (1982) 133 Cal.App.3d 297, 309 [184 Cal.Rptr. 740].) In this case, appellant has always maintained the position that she was a parent of the child and therefore was entitled to custody and visitation. The court therefore had jurisdiction under the Uniform Parentage Act to decide whether appellant was a parent. Its determination that she was not a parent simply led to the substantive conclusion, based on the provisions of Civil Code section 4600, creating a presumption in favor of parental custody, that as a nonparent she could not obtain the relief she sought, i.e., custody and visitation over the objections of the children's only parent.

tionship of parent and child may be proved between a child and its natural mother by proof of her having given birth to the child (Civ. Code, § 7003, subd. (1)), between a child and an adoptive parent by proof of adoption (Civ. Code, § 7003, subd. (3)), and between a natural father and a child as provided in the act (Civ. Code, § 7003, subd. (2)).[3]

■ It is undisputed that appellant is not the natural mother of K. and S., and that she has not adopted either child. She does not contend that she and respondent had a legally recognized marriage when the children were born. Based on these undisputed facts, the court correctly determined that appellant could not establish the existence of a parent-child relationship under the Uniform Parentage Act.

Appellant nonetheless asserts that the Uniform Parentage Act does not provide the exclusive definition of a parent. She asserts that her allegations of a long-term relationship in which she has become a "psychological parent" of the children would, if proved,[4] entitle her to seek custody and visitation as if the dispute were between two legally recognized parents. She advances several legal theories to support her assertion that she has acquired "parental rights," i.e., the right to seek custody and visitation on an equal footing with the children's natural mother and over their natural mother's objections. First, she argues that she is either a "de facto" parent, or that she stands "in loco parentis."

## A. *De Facto Parenthood*

■ A de facto parent is "that person who, on a day-to-day basis, assumes the role of parent, seeking to fulfill both the child's physical needs and his psychological need for affection and care." (*In re B. G.* (1974) 11 Cal.3d 679, 692, fn. 18 [114 Cal.Rptr. 444, 523 P.2d 244].) ■ Appellant alleged that she helped facilitate the conception and birth of both children and immediately after their birth assumed all the responsibilities of a parent. K. lived with appellant until the underlying dispute arose, and S.

---

[3] The Uniform Parentage Act also creates a presumption that a man is the natural father if he meets the conditions set forth in section 621 of the Evidence Code, or the child is born during a valid marriage or a marriage that apparently complies with the law. A man may also be presumed to be a natural father if after the child is born, he and the child's mother marry or attempt to marry and he engages in conduct holding the child out as his own by, for example, permitting his name to be put on the birth certificate. (Civ. Code, § 7004.) The Uniform Parentage Act also establishes that the husband of a woman who bears a child through artificial insemination is deemed to be the child's natural father. (Civ. Code, § 7005.)

[4] Although appellant's allegations regarding her relationship to the two children have not been proved, the record strongly suggests that appellant could prove that since their birth she has, from the children's point of view, especially as to K., performed the role of a loving mother.

also lived with appellant until appellant and respondent separated, and thereafter S. visited with appellant on a regular basis. These facts may well entitle appellant to the status of a "de facto" parent. It does not, however, follow that as a "de facto" parent appellant has the same rights as a parent to seek custody and visitation over the objection of the children's natural mother. In *In re B. G., supra*, 11 Cal.3d 679, the court acknowledged that the concept of "de facto" parenthood could apply to long-term foster parents for the purpose of permitting them to intervene in a dependency proceeding. The court went on to hold that, nonetheless, *custody* could not be awarded to the foster parents over the objections of the natural mother without a finding that parental custody would be detrimental to the children. (*Id.* at pp. 692-695.) The court also specifically stated that, "[w]e do not hold that a de facto parent is a 'parent' or 'guardian' as those terms are used in the Juvenile Court Law." (*Id.* at p. 693, fn. 21.)

No cases support appellant's contention that if she could prove her status as a de facto parent, she would be entitled to seek custody of respondent's children according to the same standards applied in a dispute between two parents. To the contrary, the cases establish that nonparents, even if they qualify as "de facto parents," may be recognized in guardianship or dependency proceedings and may even obtain custody over children with whom they have established a de facto parent-child relationship, but that custody can be awarded to a de facto parent *only* if it is established by clear and convincing evidence that parental custody is detrimental to the children. (See, e.g., *Guardianship of Shannon* (1933) 218 Cal. 490 [23 P.2d 1020]; *Guardianship of Phillip B.* (1983) 139 Cal.App.3d 407 [188 Cal.Rptr. 781]; *In re Lynna B.* (1979) 92 Cal.App.3d 682 [155 Cal.Rptr. 256]; *In re Volkland* (1977) 74 Cal.App.3d 674 [141 Cal.Rptr. 625].)[5]

Appellant argues that, in this case, the "detriment" standard should not apply because appellant is not an "outsider" and does not seek to exclude the parent but wants to share custody. In *all* of the cases involving a "de facto" parent, the individual claiming such status necessarily is not an "outsider" and, like appellant, has undoubtedly developed deep psychological and emotional bonds with the child. Nonetheless, the courts and our Legislature have chosen to place paramount importance upon the relationship between the natural or adoptive parent and the child. (*In re Marriage of Halpern, supra*, 133 Cal.App.3d at p. 312.) ▮▮ Even the discretionary visitation provided nonparents by Civil Code section 4601 "must give way

---

[5] In *In re Marriage of Halpern, supra*, 133 Cal.App.3d 297, relied upon by appellant, the court stated that even if the husband in a marriage dissolution, who was admittedly not the biological father of a child born to his wife during their marriage, had proved that he was a de facto parent, the presumption in favor of parental custody would still apply in a dispute over custody or visitation. (*Id.* at pp. 311-313.)

to the paramount right to parent if the visitation creates conflicts and problems . . . . [¶] The critical importance in California of the right to parent has been affirmed and reaffirmed. [Citations.] It only gives way upon a showing of parental unfitness, detrimental to the child's welfare." (*In re Marriage of Jenkens* (1981) 116 Cal.App.3d 767, 774 [172 Cal.Rptr. 331].)

### B. *In Loco Parentis*

■ Appellant next advances the theory that the common law doctrine of "in loco parentis" could be applied to confer upon her the same rights as a parent to seek custody and visitation of S. and K. In the context of torts, the concept of in loco parentis has been used to impose upon persons standing "in loco parentis" the same rights and obligations imposed by statutory and common law upon parents. (See, e.g, *Costello* v. *Hart* (1972) 23 Cal.App.3d 898 [100 Cal.Rptr. 554].) It has also been applied to confer certain benefits upon a child, such as more favorable inheritance tax treatment (*Loomis* v. *State of California* (1964) 228 Cal.App.2d 820, 825 [39 Cal.Rptr. 820]), or workers' compensation benefits (*Moore S. Corp.* v. *Industrial Acc. Com.* (1921) 185 Cal. 200 [196 P. 257, 13 A.L.R. 676]). The concept of "in loco parentis," however, has never been applied in a custody dispute to give a nonparent the same rights as a parent, and we are unpersuaded that the concept should be so extended.

In *Perry* v. *Superior Court* (1980) 108 Cal.App.3d 480 [166 Cal.Rptr. 583], the court referred to the concept of in loco parentis in the context of a custody dispute. The trial court awarded the mother's husband of six years visitation rights to her child by a former marriage. The trial court found that the husband had performed the role of father to the child and the fact that there was no blood relationship was inconsequential because visitation was in the best interests of the child. The court of appeal reversed holding that the trial court had no authority to award custody or visitation unless the minor was a "child of the marriage." Noting that the result was "not particularly palatable," the court invited the Legislature to address the problem of visitation rights for stepparents. (*Id.* at pp. 481-486.) The Legislature responded by enacting Civil Code section 4351.5 in 1982. (See *In re Marriage of Lewis & Goetz* (1988) 203 Cal.App.3d 514, 517 [250 Cal.Rptr. 30].) Although that section creates discretion to award a limited form of visitation rights to stepparents in a dissolution proceeding, the Legislature again acknowledged the importance of parental autonomy by cautioning that even an award of visitation to a stepparent "shall not conflict with any visitation or custodial right of a natural or adoptive parent who is not a party to the proceeding." (Civ. Code, § 4351.5, subd. (j).) Courts have consistently refused to expand section 4351.5 to cover factual situations not specifically addressed by that section. (See *In re Marriage of Lewis & Goetz,*

*supra,* 203 Cal.App.3d at p. 518; *White* v. *Jacobs* (1988) 198 Cal.App.3d 122, 124 [243 Cal.Rptr. 597]; *Marckwardt* v. *Superior Court* (1984) 150 Cal.App.3d 471, 476 [198 Cal.Rptr. 41].)

C. *Parenthood by Equitable Estoppel*

Appellant argues that the court could apply the doctrine of equitable estoppel to prevent respondent from denying the existence of a parent-child relationship that she allegedly encouraged and supported for many years and which she now denies for the sole purpose of obtaining unfettered control over the custody of the children.

In California, equitable estoppel has been invoked for the purpose of imposing support obligations on a husband who has represented to his wife's children that he is their natural father and subsequently seeks to deny paternity for the purpose of avoiding support obligations. (See, e.g., *In re Marriage of Johnson* (1979) 88 Cal.App.3d 848 [152 Cal.Rptr. 121]; *Clevenger* v. *Clevenger* (1961) 189 Cal.App.2d 658, 675 [11 Cal.Rptr. 707, 90 A.L.R.2d 569].) Equitable estoppel has never been invoked in California against a natural parent for the purpose of awarding custody and visitation to a nonparent. (*See Guardianship of Ethan S.* (1990) 221 Cal.App.3d 1403, 1415 [271 Cal.Rptr. 121].)[6]

Other states, however, have begun to use the doctrine of equitable estoppel to prevent a wife from denying the paternity of her husband. (See Runner, *Protecting a Husband's Parental Rights When His Wife Disputes the Presumption of Legitimacy* (1989-90) 28 J. Fam.L. 115 and cases cited therein.) For example, in *In re Paternity of D.L.H.* (1987) 142 Wis.2d 606 [419 N.W.2d 283], the court held that a wife could be estopped to deny the paternity of her husband, even where human leukocyte antigen (HLA) tests had excluded the husband as the natural father. The husband knew, even before the child's birth, that he was not the biological father but promised to raise the child as his own. He had developed a strong relationship with the child and had paid support to the mother after the couple separated. The court held it was error to dismiss the husband from the paternity

---

[6]In *In re Marriage of Valle* (1975) 53 Cal.App.3d 837 [126 Cal.Rptr. 38], the court left open the possibility that if a husband is estopped to deny paternity for purposes of imposing the obligation to pay support, "we perceive no good reason why the trial court should not have jurisdiction to award child *custody* when the parenthood is established by estoppel and when the issue is fairly and properly litigated with both parties present." (*Id.* at p. 842.) However, in *Valle,* neither the husband nor the wife was the natural parent of the children. Moreover, the court discussed the concept of equitable estoppel primarily for the purpose of refuting the husband's contention that, because there was no biological relationship between the children and the husband *or* the wife, that they were not "children of the marriage" and therefore the trial court was without jurisdiction to award custody to the wife.

proceedings after the HLA tests excluded him as the natural father, and remanded to permit him to prove the elements of equitable estoppel. The court, however, specifically reserved the question whether, even if the wife were estopped to deny paternity, the husband would have the status of a parent in a custody dispute and could thereby invoke the standard of the best interests of the child. (*Id.* at p. 287.) Even if the doctrine of equitable estoppel could be used against a wife and in favor of a husband to award custody as if the dispute were between two natural parents, we note that the use of the doctrine of equitable estoppel, in these out-of-state cases, is rooted in "[o]ne of the strongest presumptions in law [i.e.] that a child born to a married woman is the legitimate child of her husband." (Runner, *Protecting a Husband's Parental Rights When His Wife Disputes the Presumption of Legitimacy*, 28 J. Fam.L., *supra*, at p. 116.) No similar presumption applies in this case.

It is important not to confuse appellant's argument regarding equitable estoppel with the concept of an "equitable parent." The concept of an "equitable parent" has been recognized by the Michigan Court of Appeals in a divorce proceeding to permit a husband, who is not the biological father of a child born during the marriage, to obtain the status of a parent in a custody dispute with the natural mother, and to have the custody dispute settled as if it were between two natural parents, according to the child's best interests. (*Atkinson* v. *Atkinson* (1987) 160 Mich.App. 601 [408 N.W.2d 516, 517-520, 84 A.L.R.4th 643].) The primary difference between the concept of an "equitable parent" and the equitable estoppel theory advanced by appellant is that the "equitable parent" theory is rooted in a statutory recognition of "equitable adoption" for purposes of inheritance and may require proof of an express or implied contract to adopt. (See Runner, *Protecting a Husband's Parental Rights When His Wife Disputes the Presumption of Legitimacy*, 28 J. Fam.L., *supra*, at pp. 128-130.) At least one California court has already declined to adopt the concept of an "equitable parent" for the purpose of awarding joint custody to a stepfather over the objections of the child's natural mother despite the fact that California, like Michigan, recognizes the doctrine of "equitable adoption" for purposes of inheritance under Probate Code section 6408. (See *In re Marriage of Lewis & Goetz, supra*, 203 Cal.App.3d at pp. 519-520.) The court stressed that given the "complex practical, social and constitutional ramifications" of expanding the class of persons entitled to assert parental rights, the decision was better left to the Legislature. (*Id.* at pp. 519-520.)

D. *Functional Definition of Parenthood*

Finally, appellant urges us to adopt what she describes as a "functional" definition of parenthood in order to protect on-going relationships between

children and those who function as their parents. In accordance with this new definition, the class of persons entitled to seek custody and visitation according to the same standards as a natural parent would include "anyone who maintains a functional parental relationship with a child when a legally recognized parent created that relationship with the intent that the relationship be parental in nature." (See Polikoff, *This Child Does Have Two Mothers: Redefining Parenthood to Meet the Needs of Children in Lesbian-Mother and Other Nontraditional Families* (1990) 78 Georgetown L.J. 459, 464.)

We agree with appellant that the absence of any legal formalization of her relationship to the children has resulted in a tragic situation.[7] As is always the case, it is the children who will suffer the most as a result of the inability of the adults, whom they love and need, to reach an agreement. We do not, however, agree that the only way to avoid such an unfortunate situation is for the courts to adopt appellant's novel theory by which a nonparent can acquire the rights of a parent, and then face years of unraveling the complex practical, social, and constitutional ramifications of this expansion of the definition of parent.[8]

### CONCLUSION

Although the facts in this case are relatively straightforward regarding the intent of the natural mother to create a parental relationship between appellant and her children, expanding the definition of a "parent" in the manner advocated by appellant could expose other natural parents to litigation brought by child-care providers of long standing, relatives, successive sets of stepparents or other close friends of the family. No matter how narrowly we might attempt to draft the definition, the fact remains that the status of individuals claiming to be parents would have to be litigated and resolution of these claims would turn on elusive factual determinations of the intent of the natural mother, the perceptions of the children, and the course of conduct of the party claiming parental status. By deferring to the Legislature in matters involving complex social and policy ramifications far beyond the facts of the particular case, we are not telling the parties that the issues they raise are unworthy of legal recognition. To the contrary, we intend only to illustrate the limitations of the courts in fashioning a comprehensive solution to such a complex and socially significant issue.

---

[7] This is not unique to same-sex domestic partners. Others often find they cannot maintain their close personal ties with children in the face of objection by their parents. (See *White* v. *Jacobs, supra*, 198 Cal.App.3d 122.)

[8] Although the validity of an adoption in these circumstances is not before us, we note that Civil Code section 221 provides, in part, that "[a]ny unmarried minor child may be adopted by any adult person . . ." We see nothing in these provisions that would preclude a child from being jointly adopted by someone of the same sex as the natural parent. (Cf. *Marshall* v. *Marshall* (1925) 196 Cal. 761, 767 [239 P. 36].)

The judgment is affirmed.

Newsom, Acting P. J., and Dossee, J., concurred.