[No. A089378. First Dist., Div. One. Oct. 17, 2000.]

Guardianship of OLIVIA J., a Minor.
KAREN B., Petitioner and Appellant, v.
JENNIFER J., Objector and Respondent.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the portions indicated by the court. Ellipses enclosed in brackets have been used to signal the omission of sentences and parts of sentences in executing the court's order for partial publication.

## COUNSEL

Jill Hersh and Jenny Wald for Petitioner and Appellant.

Carol Amyx for Objector and Respondent.

## OPINION

**STEIN, J.**—Karen B. (appellant), the former domestic partner of Jennifer J. (respondent), appeals from a judgment dismissing her petition for guardianship of the minor, Olivia J., born to respondent while she and appellant were living in the same household as a couple. Appellant alleged that, with respondent's encouragement, she loved and supported Olivia as her daughter, and Olivia called her "Mama," and respondent, "Mommy." Before the child was two years old, the relationship between appellant and respondent ended. When respondent moved out of house, with Olivia, she told appellant that she would never see Olivia again. After consulting with several lawyers, including Carol Amyx, who ultimately represented respondent, appellant filed a petition for guardianship.

Appellant contends that the court erred by dismissing her petition without an evidentiary hearing to determine the merits of her allegation that parental custody is detrimental to the minor. [. . .]*

We shall reverse the judgment dismissing the guardianship petition [. . .]* and remand for further proceedings.

### FACTS

On March 17, 1999, appellant filed a petition, seeking what she described as an "appointment of Guardian with the right of visitation." The petition did not allege that parental custody was detrimental to the minor. She also filed an ex parte application seeking an immediate order for temporary (or pendente lite) visitation, which the court granted.

On April 26, 1999, appellant amended her petition to allege that parental custody is detrimental to the child. In an attachment to the pleading appellant specifically alleged that parental custody "is detrimental to the minor child because Ms. Jones denies the mother-child relationship between Petitioner and the minor child and thereby causes the minor child psychological harm."[1]

On May 3, 1999, respondent filed a motion to vacate the temporary visitation order, and to dismiss the petition based upon the decision in

---

*See footnote *ante*, page 1146.

[1]Appellant also attached to the amended petition a declaration summarizing the facts she intended to prove regarding her relationship to the minor child. It inadvertently included the same statement as the declaration attached to the original petition, disavowing any contention that parental custody is detrimental, and asserting that the sole purpose of the guardianship is to establish her visitation rights. This appears to have been a clerical error, because in the proceedings below, and on appeal, she consistently maintains that in her amended petition she sought appointment as guardian, and alleged, and was prepared to prove, parental custody is

*Guardianship of Z.C.W.* (1999) 71 Cal.App.4th 524 [84 Cal.Rptr.2d 48]. [. . .]*

The court suspended its prior order regarding visitation, based upon its conclusion that it had no power to order visitation unless a temporary or permanent guardian had been appointed.[2] [. . .]*

After hearing arguments on the motion to dismiss, the court construed the motion as a motion for judgment on the pleadings, and granted the motion. It held that appellant is not a parent of the child, and therefore, in the absence of an allegation of abuse, neglect or abandonment, appellant could not, as a matter of law, establish that parental custody was detrimental to the child. The court further held that a finding of detriment could not be based upon a "showing that the natural parent is depriving the child of a relationship with another non-parent." The court also observed: "A compelling case is made here that the petitioner is Olivia's *de facto* parent. Olivia may consider her to be her mother (or, at least one of her mothers). The loss of petitioner to Olivia may be 'detrimental' to her in the everyday meaning of the word." The court, however, interpreted the decision in *Guardianship of Z.C.W., supra,* 71 Cal.App.4th 524, as holding that, as a matter of law, the loss of the minor's relationship with appellant, "is not the kind of detriment which can provide the legal basis for a guardianship when the guardianship is opposed by a parent."

[. . .]*

ANALYSIS

I.

*Dismissal of the Petition for Guardianship*

In *Nancy S. v. Michele G.* (1991) 228 Cal.App.3d 831 [279 Cal.Rptr. 212], this court addressed the question whether a trial court had erred in finding a

detrimental to the child. We therefore disregard the statements to the contrary in her supporting declaration.

*See footnote, *ante,* page 1146.

[2]Appellant does not seek review of this order. The court based its ruling on *In re Guardianship of Martha M.* (1988) 204 Cal.App.3d 909, 911 [251 Cal.Rptr. 567]. (Racanelli, J.) In *Martha M.,* this court recognized that the court has inherent power to grant visitation rights in a guardianship proceeding, including an award of visitation to a person unrelated to the minor by consanguinity or marriage. (*Id.* at pp. 911-913.) This court, however, also held that the petition for visitation could only be granted in a proceeding in which the court had continuing jurisdiction to supervise the guardian and modify the actions of the guardian, including requiring the guardian to permit visitation. (*Id.* at p. 913.)

former domestic partner of the natural mother of two children was not a "parent" under the Uniform Parentage Act. In that case, we rejected the argument of Michele G., who was neither the natural, nor the adoptive mother of the children, that the statutory definition of a "parent" should be judicially expanded, to include a person such as herself, who had lived in the same household with the children and performed the role of a parent, fulfilling the child's physical and emotional needs. (See Fam. Code, § 7601 [defining a parent as one who is the natural or adoptive parent of a child].) By this proposed expansion of the statutory definition of parent, Michele G. sought to have her claim to custody and visitation with the two minor children resolved as if it were a dispute between two parents, in accordance with former Civil Code section 4600, subdivision (d)[5] directing the court to exercise its discretion based upon " '*the best interests of the child.*' " (228 Cal.App.3d at p. 835, italics added.)

This court observed that "the absence of any legal formalization of [Michele G.'s] relationship to the children" had "resulted in a tragic situation." (*Nancy S. v. Michele G., supra,* 228 Cal.App.3d at p. 841.) Nevertheless, we held that "expanding the definition of a 'parent' in the manner advocated by appellant could expose other natural parents to litigation brought by child-care providers of long standing, relatives, successive sets of stepparents, or other close friends of the family. No matter how narrowly we might attempt to draft the definition, the fact remains that the status of individuals claiming to be parents would have to be litigated and resolution of these claims would turn on elusive factual determinations of the intent of the natural mother, the perceptions of the child and the course of conduct of the person claiming parental status."[6] (*Id.* at p. 841.)

Although the *facts* in *Nancy S.*, concerning the relationship between the appellant and the respondent, the intent of the respondent to create and

---

[5]Now Family Code section 3040, subdivision (a).

[6]Since the decision in *Nancy S.*, the courts have had to struggle with the application of the statutory definition of a parent to many factual circumstances likely not anticipated when these definitions were legislated. (See, e.g., *Johnson v. Calvert* (1993) 5 Cal.4th 84 [19 Cal.Rptr.2d 494, 851 P.2d 776] [court extended presumptions specified in the Uniform Parentage Act usually applied to determine status as a father to declare a woman, intended by the terms of a surrogacy contract to be the mother, to be the legal mother]; *In re Marriage of Buzzanca* (1998) 61 Cal.App.4th 1410 [72 Cal.Rptr.2d 280, 77 A.L.R.5th 775] [man who together with his wife caused a surrogate to be impregnated with donor sperm and egg, but divorced his wife before the child was born declared the legal father]; see also *Dunkin v. Boskey* (2000) 82 Cal.App.4th 171 [98 Cal.Rptr.2d 44] [prior litigation that determined male domestic partner of women who bore child by artificial insemination and who entered into contract whereby the mother agreed that her domestic partner would have custodial rights, and he agreed to provide support of the child, was not a legal father within the meaning of Uniform Parentage Act was res judicata in action for damages for breach of contract by male partner].)

support a relationship between her former partner and the minor similar to the relationship between parent and child, and the perceptions of the child are very similar to the facts asserted by appellant in several declarations below, the *legal issues* presented in this appeal are quite different. Appellant has filed a petition for guardianship pursuant to Probate Code section 1510 for appointment of a guardian for a minor, and has alleged that *parental custody is detrimental to the child.* (See Fam. Code, § 3041 [the court may not grant custody to a nonparent over the objections of a parent unless it finds that parental custody is detrimental to the child and that granting to a nonparent is required to serve the best interests of the child].) Although appellant describes her relationship with the minor as a parent-child relationship, she *does not* seek a declaration of the existence of a parent-child relationship under the Uniform Parentage Act, and concedes, for the purpose of this proceeding, that *she does not have the legal status of a parent.* She therefore is not entitled to have the court decide whether to appoint her as guardian based upon the best interests of the child. On appeal, she contends only that the court erred by dismissing her petition, without allowing her an opportunity to prove that parental custody is detrimental to the child and that an award of custody to a nonparent is required to serve the best interests of the child.

Although we emphasize that appellant's burden, on remand, to establish that parental custody is detrimental to the child will be difficult to meet, we shall reverse the dismissal of her petition, because the court: (1) applied the wrong legal standard by ruling that appellant, as a nonparent, could not establish parental custody is detrimental to the child in the absence of an allegation of "serious abuse, neglect, or abandonment by the parent"; and (2) erroneously interpreted *Guardianship of Z.C.W., supra,* 71 Cal.App.4th 524, as standing for the proposition that loss or termination of a child's relationship with a nonparent cannot, *as a matter of law,* be a basis for finding parental custody to be detrimental to the child.

1. *A Nonparent Petitioning for Guardianship Need Not Allege Serious Abuse, Neglect or Abandonment.*

■ Probate Code section 1510 provides that a relative, "or other person on behalf of the minor, . . . may file a petition for the appointment of a guardian of the minor." Therefore, appellant's status as a nonparent does not preclude her from filing the petition.[7] However, her status as a nonparent does require that she meet a heavy burden before the court may grant her

---

[7]The trial court did not dismiss the petition on the ground that appellant had no standing to file it. At least one court has suggested, that "a nonparent in a same sex-bilateral relationship" has "no standing to avail herself of" a "dissolution . . . , *guardianship* . . . , or dependency"

petition. As this court explained, in *Guardianship of Phillip B.* (1983) 139 Cal.App.3d 407, 419 [188 Cal.Rptr. 781]: "Courts generally may appoint a guardian over the person or estate of a minor 'if it appears necessary or convenient.' (Prob. Code, § 1514, subd. (a).) But the right of parents to retain custody of a child is fundamental and may be disturbed ' ". . . only in extreme cases of persons acting in a fashion incompatible with parenthood." ' (*In re Angelia P.* (1981) 28 Cal.3d 908, 916 [171 Cal.Rptr. 637, 623 P.2d 198], quoting *In re Carmaleta B.* (1978) 21 Cal.3d 482, 489 [146 Cal.Rptr. 623, 579 P.2d 514].) Accordingly, the Legislature has imposed the stringent requirement that before a court may make an order awarding custody of a child to a nonparent without consent of the parents, 'it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interests of the child.' (Civ. Code, § 4600, subd. (c); see *In re B.G.* (1974) 11 Cal.3d 679, 695-699 [114 Cal.Rptr. 444, 523 P.2d 244].) That requirement is equally applicable to guardianship proceedings under Probate Code section 1514, subdivision (b)."[8] The enactment of former Civil Code section 4600, now Family Code section 3041, changed the focus of a custody dispute between a nonparent and a parent, from the unfitness of the parent, to the detriment to the child. "The Legislature did not, however, intend to disturb the judicial practice of awarding custody to nonparents in preference to parents only in unusual and extreme cases." (*In re B.G., supra*, 11 Cal.3d 679, 695-699.)

■ None of these statutory provisions, however, require the petitioner to allege "specific facts showing detriment," and the limitation of Family Code

---

proceeding as a forum for adjudication of a claim to custody. (*West v. Superior Court* (1997) 59 Cal.App.4th 302, 305 [69 Cal.Rptr.2d 160], italics added, quoting its prior decision *Curiale v. Reagan* (1990) 222 Cal.App.3d 1597, 1600 [272 Cal.Rptr. 520].) Neither decision, however, actually involved a guardianship petition. The court in *Guardianship of Z.C.W., supra*, 71 Cal.App.4th 524, 527 cited these decisions, and summarized their holdings. However, neither the trial court, nor the Court of Appeal, in *Z.C.W.*, disposed of the petition on the ground that the appellant lacked standing. To the contrary, the trial court in *Z.C.W.* held a hearing on the petition, and denied it on the ground that parental custody was not detrimental to the child. (*Id.* at p. 527.) Although the court must have before it a pending proceeding in which custody or visitation is in issue, before it can adjudicate such a claim, custody is in issue in a guardianship proceeding, and we see nothing in the language of Probate Code section 1510 to suggest that appellant's status as a nonparent, much less her status as a former participant in a lesbian relationship, precludes her from initiating such proceedings as a person on behalf of the minor.

[8]Since our decision in *Guardianship of Phillip B., supra*, 139 Cal.App.3d 407, Civil Code section 4600, subdivision (c) has been repealed and recodified as Family Code section 3041; and Probate Code section 1514, subdivision (b) has been amended to specify that in "appointing a guardian of the person, the court is governed by" Family Code section 3041 when the petitioner is a nonparent. Substantively, however, the requirement that the court may not appoint a nonparent guardian of a child, over the objections of a parent, unless it makes a finding that parental custody is detrimental to the child, remains unchanged.

section 3041, requiring pleading of only the ultimate fact of detriment, does not deprive the natural parent of adequate notice. (*Guardianship of Phillip B., supra,* 139 Cal.App.3d 407, 425.) Probate Code section 1514, subdivision (a) simply requires a standard allegation that the requested guardianship is "necessary or convenient." Probate Code section 1514, subdivision (b) specifies that, in appointing a guardian, the court is governed by, among other provisions, section 3041 of the Family Code relating to custody of a minor.

Appellant's amended petition satisfied these pleading requirements of the Probate Code, and alleged that parental custody was detrimental to the child in accordance with Family Code section 3041. The court, nevertheless, found this allegation of detriment insufficient, as a matter of law, because appellant did not allege "serious abuse, neglect or abandonment by the parent."

We question, in the first instance, whether a petition for guardianship may be subjected to the same standards as pleadings in an action at law. (See *Guardianship of Lee* (1954) 123 Cal.App.2d 882, 885 [267 P.2d 847] [a guardianship " 'petition is not subjected to the tests given to complaints in actions at law' "]; *Guardianship of McConnell* (1938) 26 Cal.App.2d 102 [78 P.2d 1043] [petition to appoint guardian for allegedly incompetent adult should not be subjected to the test given to complaints in an action at law].) It is especially difficult to test the sufficiency of an allegation that parental custody is detrimental, in accordance with the standards normally applied to a demurrer, or judgment on the pleadings, because Family Code section 3041 requires that if a pleading alleges that parental custody would be detrimental to the child, allegations "other than a statement of that ultimate fact, shall not appear in the pleadings." Nevertheless, as authority for entertaining the motion to dismiss, the trial court relied upon Probate Code section 1000, which provides that, except as otherwise provided by the Probate Code, "the rules of practice applicable to civil actions apply to, and constitute the rules of practice in, proceedings under this code," and the absence of any Probate Code provision *precluding* the application of Code of Civil Procedure section 438. It therefore construed the motion to dismiss as a motion for judgment on the pleadings, and granted it.

We need not resolve appellant's contention that neither a demurrer, nor a Code of Civil Procedure section 438 motion may be used to test the sufficiency of the pleadings in a probate petition, because we, in any event, must reverse the judgment, based upon the court's application of an erroneous legal standard requiring that a nonparent seeking appointment as a guardian specifically allege "serious abuse, neglect or abandonment by the

parent." The standard for granting a motion for judgment on the pleadings is essentially the same as that applicable to a general demurrer, that is, under the state of the pleadings, together with matters that may be judicially noticed, it appears that a party is entitled to judgment as a matter of law. (Code Civ. Proc., § 438, subd. (d); *Smiley v. Citibank* (1995) 11 Cal.4th 138, 146 [44 Cal.Rptr.2d 441, 900 P.2d 690].)

The trial court's imposition of the requirement that, in addition to alleging that parental custody is detrimental to the child, appellant must allege "serious abuse, neglect, or abandonment by the parent" apparently is derived from the standard set forth in former Welfare and Institutions Code section 361, subdivision (b), which required a court, in juvenile dependency proceedings, to find by clear and convincing evidence, "physical abuse, psychological abuse, sexual abuse, and the absence of a parent willing to have physical custody," before the state may remove a child from the physical custody of a parent and declare the child a dependent of the court. (*In re Angelica M.* (1985) 170 Cal.App.3d 210, 214 [216 Cal.Rptr. 18]; see also *In re Chantal S.* (1996) 13 Cal.4th 196, 207 [51 Cal.Rptr.2d 866, 913 P.2d 1075] ["the purpose of juvenile court proceedings is to protect children who have been seriously abused, neglected or abandoned by their parents"].) Probate Code section 1514, subdivision (b) specifies that in deciding whether to appoint a guardian, the court, instead, is governed by Family Code section 3041, which requires that, in a dispute between a parent and a nonparent, before awarding custody to a nonparent, the court must make an express finding that parental custody is detrimental to the child. Although evidence of the specific abuses necessary for a juvenile court in a dependency proceeding to remove a child from the custody of a parent, would no doubt support a finding of detriment, we find nothing in Probate Code section 1514, subdivision (b), or Family Code section 3041 that *limits* the court to those circumstances. (See *In re Angelica M., supra,* 170 Cal.App.3d 210, 214 [court recognized that a finding of the specific abuses set forth in former Welf. & Inst. Code, § 361, subd. (b) would satisfy the evidentiary burden under former Civ. Code, § 4600, but the court is "not limited to the abuses" listed in that section].[9])

The decision of this court in *Guardianship of Phillip B., supra,* 139 Cal.App.3d 407, and the recent decision in *Guardianship of Zachary H.* (1999) 73 Cal.App.4th 51 [86 Cal.Rptr.2d 7], illustrate the necessity of

---

[9]The court in *In re Angelica M., supra,* 170 Cal.App.3d 210, 214, also noted that former Welfare and Institutions Code section 361, subdivision (b), by its terms, applied only when the court intended to remove a child from a custodial parent. Neither Probate Code section 1514, nor Family Code section 3041, makes any distinction between the standard of detriment applicable to a petition for guardianship depending upon whether the parent has custody of the child. The only standard governing such petitions is Family Code section 3041.

maintaining flexibility in the concept and application of the standard of detriment set forth in Family Code section 3041, and the absence of any requirement that a nonparent allege, or prove, abuse, neglect, or abandonment.

Despite the absence of the type of neglect, abuse or abandonment which would justify the state intervening in a dependency proceeding,[10] in *Guardianship of Phillip B., supra,* 139 Cal.App.3d 407, we upheld an order appointing nonparents as the guardians of a mentally retarded teenager over the objections of his parents. Phillip B.'s parents had placed him in institutions caring for the mentally retarded since birth, and he had formed a close emotional and psychological bond with petitioners, who worked as volunteers at the institution where Phillip B. resided. (*Id.* at pp. 414-418.) We held the finding that parental custody was detrimental to the child was supported by evidence of the "profound emotional harm" that would result if the parents retained custody and prevented Phillip B. from continuing his regular visits with petitioners and their children at their home. (*Id.* at p. 422.) The finding of detriment was also supported by evidence that the parents had consciously avoided emotional attachment to Phillip B., that he would experience educational and developmental injury if he remained in the custody of his parents, who did not encourage the development of independent living skills, and by a reasonable inference that his parents' past conduct "reflected a dangerously passive approach to [his medical care]." (*Id.* at pp. 422-423.)

More recently, in *Guardianship of Zachary H., supra,* 73 Cal.App.4th 51, the court upheld the appointment of a nonparent as guardian over the objections of the child's natural father, despite the absence of any finding that the father had abused, neglected, or abandoned Zachary. In that case, the natural mother placed Zachary, immediately after he was born, with intended adoptive parents, but the natural father did not consent to the adoption and was not provided with adequate notice. As a result, the adoption failed. The intended adoptive parents instead petitioned to be appointed the guardian of the child, who was, at the time of the petition, three years old and had lived his entire life with the petitioners. (*Id.* at pp. 53-57.) The natural father objected to the petition. The trial court, after holding an evidentiary hearing, found that parental custody would be detrimental to Zachary, based primarily upon evidence that removal of the child from the intended adoptive parents would result in permanent psychological damage. (*Id.* at p. 59.) On appeal, the father argued, among other things, that the trial court could not

[10]In fact, the state had unsuccessfully prosecuted a juvenile dependency petition alleging neglect based upon the refusal of the parents to consent to medical treatment for a congenital heart condition. (*Guardianship of Phillip B., supra,* 139 Cal.App.3d at p. 418.)

find parental custody was detrimental to Zachary in the absence of an evidence the father was "unfit," in the sense that, if he had custody of the child, the state would have grounds to intervene and remove the child.

The court rejected this contention, explaining: " 'It is presumably detrimental to a child to award custody to a parent who is so unfit that the state might have to intervene to retrieve custody, but it might also be detrimental to place him with a parent who is not unfit, depending upon the child's current circumstances and the available placement alternatives.' " (*Guardianship of Zachary H., supra,* 73 Cal.App.4th at p. 67, quoting *Michael U. v. Jamie B.* (1985) 39 Cal.3d 787, 796, fn. 8 [218 Cal.Rptr. 39, 705 P.2d 362].) The court noted that "detriment has no clear-cut meaning and the courts must have flexibility to make fact-specific decisions in cases like this one." (*Guardianship of Zachary H., supra,* 73 Cal.App.4th at p. 66.) It therefore concluded that a finding of detriment, pursuant to Family Code section 3041, could be based upon evidence of psychological damage that would result from "removal from a nonparent." (*Zachary H., supra,* 73 Cal.App.4th at pp. 65, 67.)

Based upon the foregoing authority, and in the absence of an express statutory limitation on the type of facts that would support a finding that parental custody is detrimental to the child, we decline to judicially engraft a requirement that the petition specifically plead, abuse, neglect, or abandonment. The question whether parental custody is detrimental to the child is highly dependent upon facts unique to each child and parent. To attempt to define the circumstances that might qualify as an "unusual and extreme [case]" (*In re B.G., supra,* 11 Cal.3d 679, 698) warranting appointment of a nonparent as guardian, over the objections of a parent, would deprive the court of the flexibility essential to its equitable jurisdiction. As this court explained in *Guardianship of Phillip B., supra,* 139 Cal.App.3d 407, "the Legislature *purposefully refrained from prescribing specific criteria in determining whether parental custody would be 'detrimental,'* reasoning that '[i]t is a nearly impossible task to devise detailed standards which will leave the courts sufficient flexibility to make the proper judgment in all cases.' (Rep. of Assem. Judiciary Com., 4 Assem. J. (1969 Reg. Sess.) p. 8061.)" (*Guardianship of Phillip B.* at p. 421; see also *Guardianship of Marino* (1973) 30 Cal.App.3d 952, 959, fn. 5 [106 Cal.Rptr. 655] [" '[w]hat is "detrimental" has not been set forth with particularity' "].) The preference for parental custody is adequately protected by requiring that the petitioner demonstrate by clear and convincing evidence that parental custody is detrimental to the child, without attempting to enumerate, by judicial gloss on the statutory language, what categories of factual circumstances may or may not be recognized as detrimental to the child.

### 2. *Loss of a Relationship with a Nonparent May Be Factor Supporting a Finding of Detriment.*

■ In addition to finding the allegation of detriment inadequate as a matter of law, because of the absence of an allegation of abuse, neglect or abandonment, the court also ruled that the psychological harm caused by the loss of a relationship with a nonparent is not, as a matter of law, a basis for a finding that parental custody is detrimental to the child. In reaching this conclusion the trial court apparently was persuaded that the decision of Division Four of this court, in *Guardianship of Z.C.W., supra,* 71 Cal.App.4th 524, was controlling on this issue. In *Guardianship of Z.C.W.,* the appellant filed a petition for guardianship, seeking visitation rights with the children of the respondent, her former domestic partner.[11] When the appellant and the respondent began living together in 1985, the respondent already had a child who was then three years old. One year after moving in together, the parties decided to have another child, and the respondent became pregnant by artificial insemination. The child was given the appellant's surname as its middle name, and both women were regularly involved in the care and support of both children. The relationship between the two women ended in 1990, but for several years the appellant visited the children regularly with the respondent's consent. (*Id.* at p. 526.) In 1994, the respondent terminated the visits, and the appellant, for the next two years maintained contact only by letter and telephone. (*Ibid.*)

Finally in 1996, the appellant petitioned for guardianship of the children, alleging that the children were being harmed by the respondent's decision to sever their relationship with her. The court *denied* a motion to dismiss the petition on the grounds that the appellant could not prove parental custody was detrimental to the children. After a trial, the court found that the appellant had been a de facto parent during the time she lived with the respondent, but had subsequently lost that status. It further found there was

---

[11]The court in *Guardianship of Z.C.W., supra,* 71 Cal.App.4th 524, also held that a "limited visitation guardianship" is not a form of relief available under the statutes governing guardianship petitions. By the term "limited visitation guardianship," the court was apparently referring to a petition such as the one initially filed by appellant in this case, in which the petitioner does not actually seek to be appointed guardian, and instead seeks an award of visitation based upon the "best interests" of the child. Although substantial questions exist as to the power of the court to order visitation absent appointment of guardian (see, e.g., *In re Guardianship of Martha M., supra,* 204 Cal.App.3d 909, 911), we need not decide that question, because in this case appellant amended her petition, seeking appointment as guardian of the minor, and alleging that parental custody is detrimental to the child. She also does not seek review of the court's order denying visitation pendente lite, which was based upon the court's conclusion that, unlike a typical family court custody battle between two parents, in this context, it had no power to award visitation absent appointment of either a temporary or permanent guardian.

no evidence of "detriment" of any significance. (*Guardianship of Z.C.W., supra,* 71 Cal.App.4th at p. 527.) The Court of Appeal reaffirmed the well-established principle that a nonparent may not be appointed as guardian of children, over the objections of their parent, absent "clear and convincing evidence that parental custody is detrimental to the children. (See Fam. Code, § 3041; *In re B.G.*[, *supra*,] 11 Cal.3d 679, 699.)" (*Ibid.*) The court held that, "in the absence of any showing of detriment to the child" it had to affirm the judgment. (*Id.* at p. 528.)

The decision in *Guardianship of Z.C.W., supra,* 71 Cal.App.4th 524, does not stand for the proposition that a person who has performed the role of a parent and formed close emotional and psychological bonds cannot, *as a matter of law*, establish that parental custody is detrimental to the child, based upon psychological harm caused by loss of that relationship. Although the facts in *Guardianship of Z.C.W.* bear many similarities to the facts alleged in this case, there is a very important procedural difference: The trial court in that case held *an evidentiary hearing* and *determined that parental custody was not detrimental to the children.* The decision in *Z.C.W.* illustrates the difficulty that appellant may have in meeting this burden, in the absence of other evidence, such as the lack of a meaningful parent-child bond (cf. *Guardianship of Phillip B., supra,* 139 Cal.App.3d 407 [parents emotionally detached from child]; *Guardianship of Zachary H., supra,* 73 Cal.App.4th 51 [child never resided with father, and primary bond was with intended adoptive parents].) Nevertheless, it does not support the decision to dismiss the petition without a hearing, solely because the detriment alleged concerns the termination of a relationship with a person who is not a parent, but is alleged to have performed the role of a parent.

Our review of the relevant authority satisfies us that the loss of a relationship with a nonparent who has acted as a de facto, or psychological parent, is a factor the court may consider in determining whether parental custody is detrimental to the child. The court in *Guardianship of Zachary H., supra,* 73 Cal.App.4th 51, 65 explicitly rejected the contention of the natural father that the "detriment prong [of Family Code section 3041] cannot be satisfied by a showing that removal from a nonparent will be detrimental." That court relied on evidence that termination of the child's relationship with the petitioners, who were not Zachary's legal parents, would result in permanent psychological harm as a basis for finding that parental custody would be detrimental to the child. (See also *In re Bridget R.* (1996) 41 Cal.App.4th 1483, 1520 [49 Cal.Rptr.2d 507] [statutory preference for maintaining child's custodial ties with legal parents does not require parental custody, "if the evidence shows that the child would be harmed if removed from the custody of those persons who have acted as de facto and psychological parents since birth"].)

Nor is the recognition of the loss of such a relationship as a factor supporting a finding of detriment limited to cases of failed adoptions. In *Guardianship of Phillip B., supra,* 139 Cal.App.3d 407, this court held the finding that parental custody was detrimental to the child was supported, in part, by evidence of the emotional harm that would result if the parents retained custody, and prevented Phillip B. from visiting the petitioners, with whom Phillip B. had formed a close psychological and emotional bond.

Respondent correctly observes that in *Zachary H.* and *Phillip B.* the children did not live, and never had lived, with their natural parents. In the case of *Zachary H.,* the only parent-child like bond was between the child and the intended adoptive parents, and the natural father was a virtual stranger to the child. In the case of *Phillip B.,* the parents had purposefully emotionally detached themselves, and their other children, from Phillip B. Respondent also demonstrates that, in nearly every other case appointing a nonparent as guardian, the parents were either dead, or did not reside with the child, or had intentionally relinquished, or passively transferred, responsibility for the care of the child to the nonparent seeking guardianship.[12] Respondent's analysis of these cases illustrates that the absence of a meaningful parent-child relationship is a significant *fact* weighing in support of a court's ultimate conclusion that the loss of a relationship with a nonparent is sufficiently detrimental to the child to warrant an award of custody to a nonparent. (See *Guardianship of Stephen G.* (1995) 40 Cal.App.4th 1418, 1431 [47 Cal.Rptr.2d 409] [parent's voluntary relinquishment of care to nonparents seeking guardianship is a factor supporting a finding that parental custody is detrimental to the child, but does not support implying an exception to the application of the doctrine of parental preference set forth in Fam. Code, § 3041].) In each of these cases, however, the court heard and weighed all of the relevant evidence, and the Court of Appeal reviewed the *factual* finding that parental custody is detrimental to the child, or in some of the older decisions, a determination that the parent was "unfit." They do not stand for the proposition that detriment can be found *only* when the child has been relinquished to others or the parents are deceased.

We conclude that the court erred in granting the motion to dismiss because it cannot be said on the face of the pleadings that appellant is not

---

[12]For example, in *Guardianship of Marino, supra,* 30 Cal.App.3d 952, the child's mother died when he was two weeks old, and he had lived with his aunt and uncle for eight years, when the father demanded that the child live with him. In *Guardianship of Pankey* (1974) 38 Cal.App.3d 919 [113 Cal.Rptr. 858], the mother of the children had died, and the father had placed them in foster care. Although the father's mother attempted to assert his parental rights, the father himself did not even appear. (*Id.* at p. 933.) In *Guardianship of Shannon* (1933) 218 Cal. 490 [23 P.2d 1020], the children lived with their stepmother for five years, and the mother was absent for that period of time.

entitled to any relief. The issue of detriment is factual, and the principles relevant to the application of Family Code section 3041 to the facts are equitable and not readily susceptible to disposition as a matter of law. Appellant should have the opportunity to present the relevant evidence to the trial court. As the court observed in *Guardianship of Lee, supra,* 123 Cal.App.2d 882: "It may well be that if there had been such a hearing and the evidence introduced was substantially the same as set forth in the affidavits, the court could have determined . . . that it was not 'necessary or convenient' that a guardian be appointed. . . . These, however, are matters that could only be determined after a hearing upon the merits of the petition itself, and the court was in error when it granted respondent's motion to dismiss the petition for appointment . . . without such a hearing." (*Id.* at pp. 888-889.)

Our holding is very limited, based upon the procedural posture of the case when it was disposed of in the trial court. It should not be construed as an expression of an opinion on the merits of appellant's petition, because we hold only that the court erred by finding as a matter of law that appellant could not establish parental custody is detrimental to the child. Nor should it be construed as an endorsement of the use of a petition for guardianship as a forum for a nonparent to obtain visitation rights over the objection of the parent, because we do not reach the issue of whether, when, and in accordance with what legal standard, visitation may be awarded in such a proceeding.[13]

We also caution that because of the strong preference for parental custody, and the heavy burden a nonparent must carry of demonstrating that parental custody is detrimental to the child, a petition for guardianship is an intrusive and limited remedy not easily adapted to achieving appellant's goal, i.e., to

---

[13]Awarding visitation to a nonparent, over the objection of a parent, may be subject to constitutional limitations. In the recent decision of the United States Supreme Court in *Troxel v. Granville* (2000) 530 U.S. 57 [120 S.Ct. 2054, 147 L.Ed.2d 49] the court invalidated a Washington statute authorizing " 'any person' " to petition, for visitation rights, " 'at any time,' " and providing that the court may order such visitation if it serves the " 'best interests of the child,' " on the grounds that the statute violates a parent's rights to substantive due process. (*Id.* at p. 63 [120 S.Ct. at p. 2059].) The court recognized that one of the "oldest of the fundamental liberty interests" is "the interest of parents in the care, custody, and control of their children." (*Id.* at p. 65 [120 S.Ct. at p. 2060].) The court identified the following reasons for invalidating the statute: (1) the statute accorded no deference to the "parent's decision that visitation would not be in the child's best interest" (*id.* at p. 67 [120 S.Ct. at p. 2061]); (2) the court, in awarding visitation to paternal grandparents over the mother's objection imposed upon the mother "the burden of *disproving* that visitation would be in the best interests of [the children]" (*id.* at p. 69 [120 S.Ct. at p. 2062], original italics); and (3) the court applied the statute to intervene, even though the mother had not denied all visitation, but rather merely refused to consent to the frequency and duration of visits sought by the grandparents. (*Id.* at pp. 73-74 [120 S.Ct. at p. 2064].)

protect the child from psychological harm, and to maintain her relationship with the child. As we observed in *Nancy S. v. Michele G., supra,* 228 Cal.App.3d 831, the underlying problem is that, in the absence of a lawful marriage, or legal status as a parent, or some other statutory recognition of her role as a member of the child's family, we know of no principled way, under existing law, to distinguish appellant's status from that of any unmarried member of a household who forms a close attachment with another person's child. At the same time, we recognize that the facts may well bear out appellant's contention that, from the minor's point of view, she does indeed have "two mothers." Yet, only one of them is recognized under existing law, and she is entitled to preference in any decision regarding custody of the minor in accordance with Family Code section 3041. Perhaps the repetition of this unfortunate scenario, in case after case, in which the appellant unsuccessfully avails herself of legal remedies not designed to suit the factual circumstances, will eventually lead to a legislative solution, if for no other reason than to protect the children involved from becoming pawns in the conflict of the adults who care for them.[14]

## II.

### *Disqualification of Respondent's Counsel**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## CONCLUSION

The judgment is reversed, and the matter is remanded to trial court for further proceedings consistent with the view expressed in this opinion. Costs to appellant.

Strankman, P. J., and Marchiano, J., concurred.

---

[14]In light of our disposition, reversing and remanding to the trial court, we need not reach appellant's remaining contentions that the dismissal of her petition without a hearing is a denial of due process and violates other constitutional rights.

*See footnote, *ante*, page 1146.