Filed 3/4/26  Guardianship of F.W. CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| Guardianship of the Person of F.W., a Minor. | |
| J.R. et al., | F089280 |
| Petitioners and Appellants, | (Super. Ct. No. 24CEPR01459) |
| v. | |
| H.W. et al., | **OPINION** |
| Objectors and Respondents. | |

APPEAL from a judgment of the Superior Court of Fresno County.  Brian M. Arax, Judge.

Castro Law Group and Mark J. Castro for Petitioners and Appellants.

No appearance for Objectors and Respondents.

-ooOoo-

Appellants, J.R. and G.R. are the maternal grandparents (collectively grandparents) of F.W., born in 2019.  In 2024, grandparents petitioned for appointment as F.W.'s guardians and alleged her parents and respondents, H.W. and D.W. (collectively parents), were unequipped to care for F.W. due to untreated mental health issues, chronic unemployment, and neglect.  Parents fled with F.W. to Washington State to try to evade the trial court's jurisdiction.  The court found the allegations in grandparents' petition concerning and had the potential for seriousness.  The court nonetheless denied grandparents' petition without holding an evidentiary hearing because the allegations did not rise to the level of removal under the standard in Welfare and Institutions Code section 300 or present "extreme and unusual circumstances" as in case law.  The petition was dismissed without prejudice.

On appeal, grandparents contend the trial court committed reversible error by applying the wrong legal standard to a probate guardianship petition and misreading relevant case law.  Grandparents further contend the court abused its discretion by dismissing their petition without an evidentiary hearing.

We conclude the trial court applied the incorrect legal standard and misunderstood relevant case law when ruling on grandparents' petition.  We therefore reverse the court's order and remand for further proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

#### A.    *Petition for Guardianship*

On September 19, 2024, grandparents filed petitions for guardianship and temporary guardianship of F.W.  Grandparents alleged that when F.W. was born in February 2019, J.R. moved to Washington to care for F.W. for the first six months of her life.  Believing parents could not care for F.W., grandparents purchased a house for them in Reedley, California.  Parents and F.W. moved into this house when F.W. was six months old.  F.W. subsequently resided with both grandparents and parents.  Grandparents alleged they provided finances for F.W.'s clothes and food and had been

2.

her primary caregivers since her birth. They provided F.W. with emotional, physical, and financial support.

Grandparents claimed parents were not equipped to provide for F.W. because neither was employed, and they had not been employed for years. Grandparents paid the mortgage for parents' residence and parents would be homeless but for grandparents' payments. They received notice utilities at parents' residence were going to be turned off for failure to pay. Parents purportedly lived in deplorable conditions that were unsanitary for F.W.

F.W. was diagnosed with a speech disorder called apraxia and had been seeing a speech therapist to assist with this condition. Parents stopped taking F.W. to the therapist because they did not like how she was receiving therapy. They neglected F.W.'s educational needs because they refused to send her to school although she was five and a half years old. F.W. has no vaccinations because parents do not take her to the doctor. Parents refused to get medical treatment for F.W. when she was sick, and she had not been to a dentist in two years.

Parents allegedly have "mental health issues," including attention deficit/hyperactivity disorder, obsessive compulsive disorder, and other severe mental health disorders that prevent them from being able to adequately and properly care for F.W. Over the last summer, H.W. refused to leave the house for more than 14 days because it was "'too hot.'" D.W. had recently criminally threatened a postal worker, as a result of which parents were no longer allowed to receive mail at their residence. Grandparents asserted parents' mental health issues had become aggressively more severe, causing irreparable harm to F.W.

Grandparents asked to be excused from giving notice to parents of the petition for temporary guardianship because they believed parents intended to abscond with F.W. Parents told F.W., "don't tell Grandma and Grandpa but we are leaving[,] we are not coming back." They had gotten a big truck, packed up their belongings, and planned to

3.

move to another state.  Grandparents claimed if parents absconded with F.W. because grandparents were required to give notice of the petition, this would deprive F.W. of her primary residence and her "'de facto'" parents since she was born.

On October 29, 2024, grandparents filed another petition for temporary guardianship.  Grandparents alleged parents were personally served with the guardianship petition on October 5, 2024.  Grandparents' counsel contacted parents and advised them that since guardianship proceedings had been initiated, they should not leave the county or state because the court has jurisdiction over F.W.  Parents replied they were already moving and did not care.  They fled California with F.W. to Washington State.

**B.      *Objection to Petition***

On December 2, 2024, parents filed an objection to the guardianship petition. Parents argued F.W. does not need her grandparents as she lives with her parents who love and care for her.  Parents accused grandparents of giving "false testimony" and being unqualified to raise F.W.

Parents confirmed J.R. came to Washington to help care for F.W. after she was born.  Grandparents wanted to be closer to F.W. and convinced parents to move to California.  They told H.W. it would be best if she was closer to help with her father's Parkinson's.  Grandparents promised H.W. a job as a home health care giver and said they knew a lot of people in the area so D.W. would have no problem getting a better paying job.  Parents sold their home in Oakville, Washington, with all proceeds going to the house in Reedley, California.  The Reedley house was purchased by grandparents with no input from parents although they would be the ones living there.  All the help that was promised did not materialize when parents moved to California and D.W. was left to find a job on his own.

F.W. has lived full-time with her parents since she was born, though she would visit and spend time with her grandparents.  When F.W. was about two and one-half years old, she would occasionally stay with grandparents for one to two days and stayed

4.

longer as she got older, but not exceeding five to six days. Grandparents fed and bought clothes for F.W. when she visited, but she was not allowed to take the clothes home with her.

Grandparents have never been F.W.'s primary caregivers. Parents are her only caregivers. They have provided proper care for F.W. since she was born. She was well fed and clothed. H.W. has been a stay-at-home mom since F.W. was born. Parents have had a small business for two years that D.W. runs.

Grandparents helped with the mortgage on the Reedley house and parents gave grandparents some money. Parents paid all the utilities at the house. The utilities have never been turned off. Parents were having a problem getting their mail at the Reedley house. D.W. got into a disagreement with the postmaster at the post office, but nothing criminal. In September and October 2023, H.W. had their mail forwarded to grandparents' house due to the issue getting their mail at the Reedley residence after this incident. Grandparents allegedly would open and read parents' mail without permission, which parents asserted was the only way they would know about a late notice on the utilities.

Parents let F.W. play and help with cooking and other chores. Parents stated that, like any five-year-old, she had a hard time picking up her toys and sometimes left them out. The Reedley house was always clean and, though cluttered, it was never unsanitary for human occupancy.

In November 2023, parents told grandparents living in California was not working for them and they were planning to move back to Washington. Grandparents did not want parents to move as it would be hard for them to see F.W. Parents alleged J.R. "can be controlling and vindictive at times."

Parents left California and moved back to Washington, where they can find better employment. They plan to homeschool F.W. Both parents have associate degrees and were qualified to teach F.W. F.W. has never been diagnosed with apraxia. She does

5.

have a speech problem with certain sounds.  F.W. has completed two classes at separate facilities and was doing better.

F.W. had her shots when she was born in Washington.  Parents have taken her to the doctor or dentist when needed.

Parents alleged J.R. is the adult causing harm to F.W.  They have asked J.R. not to give F.W. any over-the-counter medication, but she has given F.W. adult medication from around her home rather than children's medication.  J.R. gave food to F.W. that she was not supposed to consume, like strawberries, to which she has an allergy.  F.W. was also lactose intolerant and had been given the wrong milk to drink.  She had never had an accident or injury while under her parents' supervision, but she broke a bone while under J.R.'s care because J.R. was busy on her phone rather than watching F.W.  F.W. had to have a cast on for six to eight weeks due to the injury.

Parents denied having mental health issues.  D.W. has dyslexia, but it did not stop him from working and providing for his family.  H.W. also has dyslexia as well as attention deficit disorder, but these conditions did not stop her from caring for F.W. and D.W.  They alleged the past summer it was too hot to go outside, so H.W. decided it was safer for her and F.W. to stay inside.

## C.    *Trial Court's Ruling*

On December 3, 2024, the trial court held a hearing on grandparents' permanent guardianship petition.  The hearing was not reported by a court reporter.  Grandparents were present and represented by counsel.  Parents appeared in pro. per. by phone.

Grandparents' counsel had briefed the issue of the trial court's jurisdiction to act across state lines.  The court had not had an opportunity to review that brief, but accepted that parents had only established residency in Washington State for a month and a half based on information provided by parents.  The court concluded parents were intentionally fleeing the jurisdiction because they worked to establish that residency only after the petition's filing and parents requested dismissal of the action at the hearing.  The

6.

court found parents had not established foreign jurisdiction residency for the requisite six months and, therefore, F.W. was still a resident of California.[1]

The trial court found grandparents do not have custody of F.W. and have not had actual physical custody from the petition's filing. Temporary guardianship requests with detailed facts had been provided to the court on two occasions and both denied.[2] The facts elicited of risk and detriment were "concerning and have the potential for seriousness but do not rise to that level in the judgment of the Court to a Welfare and Institutions Code [section] 300 removal standard nor are the most extreme and unusual circumstances presented under cases such as In RE: Guardianship of Olivia J. and its progeny." In addition to the difficulty of reaching across state lines to recover F.W., the court was "faced with generalized concerns of education, mental health and deplorable living conditions which are no longer manifest in the new home living environment." The court had been informed maternal grandmother and maternal aunt reported their concerns to the department of social services. As far as the court could tell, the concerns have been evaluated, but the department had not acted upon the reporting. The court denied and dismissed grandparents' petition without prejudice.

Grandparents filed a timely notice of appeal.[3]

---

[1] The trial court properly determined it had jurisdiction despite parents' relocation to Washington because California was F.W.'s home state when the guardianship proceeding was commenced. (*Schneer v. Llaurado* (2015) 242 Cal.App.4th 1276, 1288; see Fam. Code, §§ 3402, subd. (g), 3421, subd. (a)(1).)

[2] The trial court had previously denied grandparents' two petitions for temporary guardianship.

[3] Parents did not file a brief and have not participated in the appeal. We therefore "decide the appeal on the record, the opening brief, and any oral argument by the appellant[s]." (Cal. Rules of Court, rule 8.220(a)(2).) "We do not consider the failure to file a respondent's brief as an admission of error." (*County of San Diego Dept. of Child Support Services v. C.P.* (2019) 34 Cal.App.5th 1, 7, fn. 7.)

## DISCUSSION

**I.      General Legal Principles and Standard of Review**

The Probate Code provides that "[a] relative or other person on behalf of the minor … may file a petition for the appointment of a guardian of the minor." (Prob. Code, § 1510, subd. (a).)  "The probate court may appoint a guardian 'if it appears necessary or convenient.' (Prob. Code, § 1514, subd. (a).)  An investigation into the circumstances of the proposed guardianship may be conducted, though the court may waive the investigation.  (Prob. Code, § 1513, subd. (a).)  …  A parent who objects to guardianship is entitled to notice and a hearing.  (Prob. Code, § 1511.)"  (*Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1122, fns. omitted (*Ann S.*).)

"Early authorities held that in contested guardianship cases, parents were entitled to retain custody unless affirmatively found unfit.  [Citation.]  However, the unfitness standard fell out of favor and the best interest of the child, as determined under the custody statutes, became the controlling consideration.  [Citations.]  The Probate Code now specifies that the appointment of a guardian is governed by the Family Code chapters beginning with sections 3020 and 3040.  (Prob. Code, § 1514, subd. (b).)"  (*Ann S., supra*, 45 Cal.4th at pp. 1122–1123.)

Family Code "[s]ection 3041 provides that before granting custody of a child to a nonparent over the objection of a parent, the court must find that custody to a parent would be detrimental to the child and that custody to the nonparent is in the best interest of the child.  [Citation.]  The finding of detriment must be supported by clear and convincing evidence, but it does not require a showing of parental unfitness."  (*H.S. v. N.S.* (2009) 173 Cal.App.4th 1131, 1137 (*H.S.*).)[4]  "The Legislature's use of the

---

[4]      Family Code section 3041 provides in relevant part:

"(a)      Before making an order granting custody to a person other than a parent, over the objection of a parent, the court shall make a finding that granting custody to a parent would be detrimental to the child and that granting custody to the nonparent is required to serve the best

8.

detriment to the child requirement instead of the parental unfitness requirement focuses on the child's interest." (*H.S., supra*, at p. 1141.)  "What constitutes the best interest of a child presents an inherently factual issue" and "is 'an inquiry that is particularly founded on application of the trial court's experience with human conduct.'" (*Guardianship of A.L.* (2014) 228 Cal.App.4th 257, 268 (*A.L.*).)

When a court appoints a guardian, the parents' rights are suspended for the duration of the probate guardianship.  (*Ann S., supra*, 45 Cal.4th at pp. 1123–1124; Fam. Code, § 7505, subd. (a).)  "Unless ended by court order, the guardianship continues until the child 'attains majority or dies.'  (Prob. Code, § 1600, subd. (a).)  The court may terminate the guardianship on a petition by the guardian, a parent, or the child, based on the child's best interest.  (Prob. Code, § 1601.)" (*Ann S., supra*, at p. 1124.)

A trial court's denial of a guardianship petition is reviewed for abuse of discretion. (*Guardianship of Vaughan* (2012) 207 Cal.App.4th 1055, 1067.)  "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.'" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)  The court's discretion however is "not unlimited" and "must be exercised within the confines of the applicable legal principles." (*Ibid*.)  "An order that implicitly or explicitly rests on an erroneous reading of the law necessarily is an abuse of discretion." (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 540.)  "[A] discretionary decision may be reversed if improper

---

interest of the child.  Allegations that parental custody would be detrimental to the child, other than a statement of that ultimate fact, shall not appear in the pleadings.  The court may, in its discretion, exclude the public from the hearing on this issue.

"(b)    Subject to subdivision (d), a finding that parental custody would be detrimental to the child shall be supported by clear and convincing evidence.

"(c)    As used in this section, 'detriment to the child' includes the harm of removal from a stable placement of a child with a person who has assumed, on a day-to-day basis, the role of the child's parent, fulfilling both the child's physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time.  A finding of detriment does not require a finding of unfitness of the parents."

criteria were applied or incorrect legal assumptions were made. [Citation.] Alternatively stated, if a trial court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, it cannot be said the court has properly exercised its discretion under the law. [Citations.] Therefore, a discretionary order based on the application of improper criteria or incorrect legal assumptions is *not* an exercise of *informed* discretion and is subject to reversal even though there may be substantial evidence to support that order." (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 15–16.) The question of whether the trial court applied the correct legal standard to an issue in exercising its discretion is a question of law reviewed de novo. (*K.T. v. E.S.* (2025) 109 Cal.App.5th 1114, 1127.)

The hearing on this matter was not reported by a court reporter and grandparents proceeded on appeal with only a clerk's transcript. In the absence of a reporter's transcript, we treat this as an appeal on the judgment roll. (*Allen v. Toten* (1985) 172 Cal.App.3d 1079, 1082.) "Because the case is presented in this posture, we presume that the trial court's findings of fact are supported by substantial evidence, and its conclusions of law are binding upon us unless error appears on the face of the record." (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 321.)

## II. Analysis

### A. *Application of Incorrect Legal Standard and Misunderstanding of Case Law*

Grandparents argue the trial court applied the wrong legal standard to their guardianship petition because the court improperly reached its decision based on the standard for removal in juvenile dependency proceedings contained in Welfare and Institutions Code section 300. They argue a petition for guardianship of a minor is instead governed by Family Code section 3041 and Probate Code section 1514.

"The scope of discretion always resides in the particular law being applied …." (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.) To determine if the

trial court abused its discretion, "we must … consider 'the legal principles and policies that should have guided the court's actions.'" (*Sargon Enterprises, Inc. v. University of Southern California, supra*, 55 Cal.4th at p. 773.) We therefore examine the law governing probate guardianships and how it differs from the applicable law for juvenile dependency proceedings (Welf. & Inst. Code, § 200 et seq.).

"The Probate Code and the Welfare and Institutions Code both contain provisions through which parents may ultimately lose custody of their children." (*Guardianship of Christian G.* (2011) 195 Cal.App.4th 581, 596 (*Christian G.*).) However, "[t]he differences between probate guardianships and dependency proceedings are significant." (*Ann S., supra*, 45 Cal.4th at p. 1122.) A dependency proceeding in the juvenile court is commenced by the filing of a petition by a social worker. (Welf. & Inst. Code, § 325.) "The social services agency has the initial responsibility to investigate allegations of abuse or neglect and has authority to take temporary custody of an abused or neglected child." (*In re Ashley M.* (2003) 114 Cal.App.4th 1, 7; see Welf. & Inst. Code, § 306.) The juvenile court has jurisdiction over any child who comes within the 10 statutory subdivisions in Welfare and Institutions Code section 300. "The specific descriptions of children 'within the jurisdiction of the juvenile court' under [Welfare and Institutions Code s]ection 300 include any child who has suffered, or is at substantial risk of suffering, serious physical harm, illness, emotional damage, sexual abuse, severe physical abuse, or lack of provision for support, inflicted by or at the responsibility of that child's parent or guardian." (*In re Elijah S.* (2005) 125 Cal.App.4th 1532, 1543–1544, fn. omitted; accord, *In re Chantal S.* (1996) 13 Cal.4th 196, 201 [juvenile court proceedings deal "with children who have been seriously abused, abandoned, or neglected"].) In contrast, "[p]robate guardianships are not initiated by the state, but by private parties, typically family members. They do not entail proof of specific statutory grounds demonstrating substantial risk of harm to the child, as is required in dependency proceedings.… No governmental entity is a party to the proceedings. It is the family

11.

members and the guardians who determine, with court approval, whether a guardianship is established ….." (*Ann S., supra*, at p. 1122.) A guardianship petition thus need not allege the child has been seriously abused, abandoned, or neglected. "Probate Code section 1514, subdivision (a) simply requires a standard allegation that the requested guardianship is 'necessary or convenient.'" (*Guardianship of Olivia J.* (2000) 84 Cal.App.4th 1146, 1154 (*Olivia J.*).)[5]

While removal of a child in dependency proceedings must be based on one or more of the specific statutory grounds in Welfare and Institutions Code section 300, the standard differs for determining if a probate guardianship should be established. "Probate Code section 1514, subdivision (b) specifies that in deciding whether to appoint a guardian, the court, instead, is governed by Family Code section 3041, which requires that, in a dispute between a parent and a nonparent, before awarding custody to a nonparent, the court must make an express finding that parental custody is detrimental to the child." (*Olivia J., supra*, 84 Cal.App.4th at p. 1155.) "A finding of detriment does not require any finding of unfitness of the parents." (*In re Kaylee H.* (2012) 205 Cal.App.4th 92, 101; accord, *H.S., supra*, 173 Cal.App.4th at p. 1137.) "Guardians may be appointed for many reasons that do not involve a contested removal of a child from his or her parental home." (*Christian G., supra*, 195 Cal.App.4th at p. 599.) "[T]he findings required under the dependency statutes are far more specific than the more flexible 'detrimental to the child' standard of Family Code section 3041." (*Id.* at p. 609, fn. 23.) And while "evidence of the specific abuses necessary for a juvenile court in a

---

[5]     In a dependency proceeding, the social services agency must provide child welfare services to the family and make statutorily mandated reports and recommendations to the juvenile court. (*In re Ashley M., supra*, 114 Cal.App.4th at p. 7; Welf. & Inst. Code, §§ 319, 361.5.) The juvenile court must conduct periodic status review hearings to consider the child's placement and parents' progress in services. (Welf. & Inst. Code, §§ 366, 366.21, 366.22.) In a probate guardianship, "[t]here is no periodic court review of the placement, as there is in dependency proceedings. [Citation.] Nor is the parent given the reunification services that the county provides to parents of dependent children." (*Ann S., supra*, 45 Cal.4th at p. 1124.)

dependency proceeding to remove a child from the custody of a parent, would no doubt support a finding of detriment" (*Olivia J., supra*, at p. 1155), neither Probate Code section 1514, subdivision (b), nor Family Code section 3041 "*limits* the court to those circumstances." (*Olivia J., supra*, at p. 1155.)

Probate Code section 1513, subdivision (b), does give the probate court the discretion to refer a matter presented by way of a guardianship petition to the local social services agency to investigate a potential dependency.[6] (See *Ann S., supra*, 45 Cal.4th at p. 1122, fn. 4 [Prob. Code, § 1513 contemplates a referral to the county social services agency for allegations of parental unfitness].) When the court makes such a referral, "[g]uardianship proceedings shall not be completed until the investigation required by [Welfare and Institutions Code] sections 328 and 329 is completed and a report is provided to the court in which the guardianship proceeding is pending. (Prob. Code, § 1513, subd. (c).)" (*In re Kaylee H., supra*, 205 Cal.App.4th at p. 101.) If a dependency proceeding "is begun and the child is adjudged a dependent of the juvenile court, the juvenile court has exclusive jurisdiction to decide all custody issues." (*Guardianship of Kaylee J.* (1997) 55 Cal.App.4th 1425, 1432; see Welf. & Inst. Code, §§ 302, subd. (c), 304.) This statutory discretion to refer the matter for potential dependency proceedings does not however alter the governing standard for determining the guardianship petition. "The only standard governing such petitions is Family Code section 3041." (*Olivia J., supra*, 84 Cal.App.4th at p. 1155, fn. 9.)

Accordingly, we agree with grandparents the trial court applied the incorrect legal standard by analyzing the guardianship petition under the removal standard in Welfare

---

[6]     Probate Code section 1513, subdivision (b), provides in relevant part: "If the proposed ward is or may be described by Section 300 of the Welfare and Institutions Code, the court may refer the matter, in writing, to the local child welfare agency to initiate an investigation pursuant to Section 329 of the Welfare and Institutions Code." At the time of *Christian G.* in 2011, the statute required referral to a social services agency if the probate court received allegations of parental unfitness. (*Christian G., supra*, 195 Cal.App.4th at p. 604.) The operative language was subsequently amended to make the referral discretionary. (Stats. 2012, ch. 638, § 14.)

13.

and Institutions Code section 300 rather than under Family Code section 3041.

Grandparents also take issue with the trial court's conclusion the guardianship petition's allegations did not show the "most extreme and unusual circumstances presented under cases such as [*Olivia J.*] and its progeny." They argue the court misunderstood the holding of *Olivia J.*

In *Olivia J.*, the mother's former domestic partner petitioned for guardianship of the child born to mother while she and the petitioner lived together as a couple. (*Olivia J., supra*, 84 Cal.App.4th at p. 1149.) The trial court found that the petitioner is not a parent of the child, and, therefore, in the absence of an allegation of abuse, neglect or abandonment, she could not, as a matter of law, establish that parental custody was detrimental to the child. The court dismissed the petition without an evidentiary hearing. (*Id.* at p. 1150.) The Court of Appeal found the petitioner's status as a nonparent did not preclude her from filing a guardianship petition given Probate Code section 1510, subdivision (a), permits a relative "or other person on behalf of the minor" to seek a guardian appointment. "However, her status as a nonparent does require that she meet a heavy burden before the court may grant her petition. As this court explained, in *Guardianship of Phillip B.* (1983) 139 Cal.App.3d 407, 419: 'Courts generally may appoint a guardian over the person or estate of a minor "if it appears necessary or convenient." [Citation.] But the right of parents to retain custody of a child is fundamental and may be disturbed "'… only in extreme cases of persons acting in a fashion incompatible with parenthood.'" [Citations.] Accordingly, the Legislature has imposed the stringent requirement that before a court may make an order awarding custody of a child to a nonparent without consent of the parents, "it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interests of the child." [Citations.] That requirement is equally applicable to guardianship proceedings under Probate Code section 1514, subdivision (b).' The enactment of former Civil Code section 4600, now

Family Code section 3041, changed the focus of a custody dispute between a nonparent and a parent, from the unfitness of the parent, to the detriment to the child. 'The Legislature did not, however, intend to disturb the judicial practice of awarding custody to nonparents in preference to parents only in unusual and extreme cases.'" (*Olivia J., supra*, at pp. 1152–1153, fns. omitted.)

The *Olivia J.* court concluded the trial court had improperly imposed a "requirement that, in addition to alleging that parental custody is detrimental to the child, [the petitioner] must allege 'serious abuse, neglect, or abandonment by the parent ….'" (*Olivia J., supra*, 84 Cal.App.4th at p. 1155.)[7] The court "decline[d] to judicially engraft a requirement that the petition specifically plead, abuse, neglect, or abandonment. The question whether parental custody is detrimental to the child is highly dependent upon facts unique to each child and parent. To attempt to define the circumstances that might qualify as an 'unusual and extreme [case]' [citation] warranting appointment of a nonparent as guardian, over the objections of a parent, would deprive the court of the flexibility essential to its equitable jurisdiction." (*Olivia J., supra*, at p. 1157.)

The "'unusual and extreme'" language in *Olivia J.* (*Olivia J., supra*, 84 Cal.App.4th at p. 1153) was quoted from *In re B.G.* (1974) 11 Cal.3d 679, the first case wherein our Supreme Court construed the predecessor to Family Code section 3041, former Civil Code section 4600. The *B.G.* court quoted from an Assembly Judicial Committee report on the statute in relevant part: "'What is "detrimental" has not been set forth with particularity. It is a nearly impossible task to devise detailed standards which will leave the courts sufficient flexibility to make the proper judgment in all circumstances … The important point is that the intent of the Legislature is that the court

---

[7] The *Olivia J.* court surmised this standard was derived from the standard set forth in juvenile delinquency proceedings and clarified the standard applicable to a guardianship petition is instead set forth in Family Code section 3041, as discussed above. (*Olivia J., supra*, 84 Cal.App.4th at p. 1155.)

consider parental custody to be highly preferable.  Parental custody must be clearly detrimental to the child before custody can be awarded to a nonparent.'"  (*B.G., supra*, at p. 698, italics omitted.)

We agree with grandparents the trial court erroneously denied their petition on the grounds the "'"most extreme and unusual circumstances'"" in existing case law are not present here.  (*Olivia J., supra*, 84 Cal.App.4th at p. 1153.)  *Olivia J.* and *B.G.* reflect that "detriment has no clear-cut meaning and the courts must have flexibility to make fact-specific decisions …."  (*Guardianship of Zachary H.* (1999) 73 Cal.App.4th 51, 66.)  Accordingly, no specific circumstances must exist for a court to find parental custody is detrimental.  Rather, this is a fact-driven inquiry, as is determining if the proposed guardianship is in the child's best interest.  (*A.L., supra*, 228 Cal.App.4th at p. 268.)  The "court's primary concern in determining the best interests of children when making any orders regarding the physical or legal custody or visitation of children" is "the health, safety, and welfare of children."  (Fam. Code, § 3020, subd. (a).)  That determination is necessarily driven by the unique facts about the child, the parents and proposed guardian presented in each guardianship petition.

We recognize this is a judgment roll appeal and, as previously discussed, reversible error must appear on the face of the record.  The minute order specifically reflects the trial court concluded the circumstances did "not rise to that level" of the "Welfare and Institutions Code [section] 300 removal standard" nor did it present the "most extreme and unusual circumstances" in *Olivia J.* and its progeny.  Because the court applied the incorrect legal standard and misunderstood applicable case law, and given the importance of the interests at stake, the order must be reversed and the matter returned for the court to exercise its discretion de novo with a proper application of the legal standards.  (*Guardianship of Vaughan, supra*, 207 Cal.App.4th at pp. 1071–1073 [reversal and remand required where the trial court misapplied the law in denying the grandparents' probate guardianship petition]; see *Barriga v. 99 Cents Only Stores LLC*

16.

(2020) 51 Cal.App.5th 299, 334 [order must be reversed if the record shows the trial court misunderstood its discretion under the applicable law]; *F.T. v. L.J., supra*, 194 Cal.App.4th at pp. 15–16 [same].)

### B. Failure to Conduct Evidentiary Hearing

Grandparents contend they made a prima facie showing of detriment and the trial court abused its discretion by failing to order an evidentiary hearing to resolve contested factual issues.

Grandparents cite *A.L.* in support of their argument the trial court was obligated to hold an evidentiary hearing on their petition. The *A.L.* court addressed whether Probate Code section 1601[8] requires an evidentiary hearing before a court may *terminate* a guardianship. (*A.L., supra*, 228 Cal.App.4th at pp. 265–269.) Consistent with the discussion above, the court found what constitutes the child's best interest is inherently a factual issue. (*Id.* at p. 268.) The court observed in relevant part: "Where a court acts as a fact finder resolving matters of considerable significance to the parties, such as the best interest of a minor, a full evidentiary hearing is warranted before the decision can properly be made." (*Ibid*.) The court concluded Probate Code "section 1601 requires an evidentiary hearing before a trial court may terminate a probate guardianship. Parties to a contested petition to terminate a guardianship, like the guardian here, should have the opportunity to present relevant evidence to the trial court at a hearing grounded in due process and the trial court has a duty to consider and pass upon the evidence presented in such a proceeding." (*A.L., supra*, at p. 269.)

Probate Code section 1601 does not apply here because, unlike *A.L.*, this case involves a petition to establish a guardianship, not a petition to terminate one. We are

---

[8]    Probate Code section 1601 provides in relevant part: "Upon petition of the guardian, a parent, the minor ward, …, the court may make an order terminating the guardianship if the court determines that it is in the ward's best interest to terminate the guardianship.… Notice of the hearing on the petition shall be given for the period and in the manner provided in Chapter 3 (commencing with Section 1460) of Part 1."

therefore not persuaded *A.L.* is controlling on whether the trial court abused its discretion by denying grandparents' petition without holding an evidentiary hearing. Other cases relied on by grandparents are also inapposite as they involved different types of proceedings. (See *In re Lesly G.* (2008) 162 Cal.App.4th 904, 907, 912 [the juvenile court in a dependency proceeding improperly failed to hold a required hearing on the mother's Welf. & Inst. Code, § 388 modification petition]; *Guardianship of Saul H.* (2022) 13 Cal.5th 827, 837–838 [addressing the statutory requirements for adjudicating special immigrant juvenile petitions].)

As grandparents acknowledge, the *Olivia J.* court questioned whether a probate guardianship petition could be subject to a demurrer or a judgment on the pleadings (Code Civ. Proc., § 438). (*Olivia J., supra*, 84 Cal.App.4th at p. 1154.) The court found, "[i]t is especially difficult to test the sufficiency of an allegation that parental custody is detrimental, in accordance with the standards normally applied to a demurrer, or judgment on the pleadings, because Family Code section 3041 requires that if a pleading alleges that parental custody would be detrimental to the child, allegations 'other than a statement of that ultimate fact, shall not appear in the pleadings.'" (*Id.* at p. 1154.) The court nonetheless concluded it need not resolve if a demurrer or judgment on the pleadings could be used against a guardianship petition because the trial court's order must be reversed in any event for applying an erroneous legal standard. (*Id.* at pp. 1154–1155.)

We need not resolve grandparents' implied contention an evidentiary hearing is required when a guardianship petition is contested because, as in *Olivia J.*, we have already concluded the trial court's order must be reversed for applying an incorrect legal standard. Even if not *required* on remand, an evidentiary hearing would, however, presumably permit the court to explore its reported concerns raised by the petition's allegations in determining if the guardianship is in F.W.'s best interest.

Given our disposition, we decline to address grandparents' argument their pleadings establish that leaving F.W. in her parents' care would be detrimental to her and it would be in F.W.'s best interest to place her in grandparents' care. We also decline to address if grandparents can establish detriment as de facto parents under Family Code section 3041, subdivision (c).[9] The trial court may decide these issues in the first instance on remand. We expressly make no comment on the merits of grandparents' petition or how the court should exercise its discretion under the applicable standard.

## DISPOSITION

The December 3, 2024, order is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion. In the interests of justice, appellants shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

MEEHAN, J.

WE CONCUR:

DETJEN, Acting P. J.

DESANTOS, J.

---

[9] Family Code section 3041 "provides that if a preponderance of the evidence shows a nonparent has assumed the parental role for a substantial period of time by providing a stable home where the child's physical and emotional needs are met (i.e., a de facto parent), this establishes the required showing that nonparental custody is in the best interest of the child and that parental custody would be detrimental. [Citations.] However, a parent may refute the evidence supporting custody with a de facto parent by showing by a preponderance of the evidence that there would be no detriment from parental custody and that nonparental custody is not required to serve the best interest of the child." (*H.S., supra,* 173 Cal.App.4th at p. 1137, fn. omitted; see Fam. Code, § 3041, subds. (c), (d).)

19.